FUNDERBURK *v.* MAYOR AND BOARD OF ALDERMEN OF CITY OF COLUMBUS.

[78 South. 1, Division B.]

1. EMINENT DOMAIN. *Public improvements. Corporation.*

Where a city damaged private property for the general welfare by changing the grade of a street, or by erecting barriers which interfered with ingress and egress from and to the property, the owner was entitled to recover damages.

2. EMINENT DOMAIN. *Public improvements. Damages to property. Right to damages.*

Where plaintiff had bargained for and paid for property but had no deed of conveyance from the former owner, but had rented the property to the former owner, and he was in possession of the premises at the time a change in the grade of the street was made in front thereof. In such case plaintiff had the equitable title to the property and possession, which was sufficient to support her claim for damages to the property by the change of grade of the street in front of the same.

APPEAL from the circuit court of Lowndes county. HON. T. D. CARROLL, Judge.

Suit by Mrs. Bessie McC. Funderburk against the Mayor and Board of Aldermen of the City of Columbus. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Frierson & Hale,* for appellant.

The lower court erred in its general conclusion that the plaintiff's title was insufficient to maintain this action. Plaintiff proved every element · of title, except a deed, existing in her from July, 1915. Consequently, the narrow question is—is a deed necessary to support an action for permanent injury to the land? The court below held that it was, and gave a peremptory instruction based on that idea. In this, the court erred.

There are numerous cases on the point. Authorities holding less than legal title sufficient to maintain this action. There are no Mississippi cases directly in point, but it has been held that trespass, an action assimilating closely to this, is supported by possession. *Darrell* v. *Dodds,* 78 Miss. 912, 30 So. 4. There is no right without a remedy; and the equitable right of the plaintiff in this property is as much the subject of the law's protection as a legal title would have been.

In 30 L. R. A. (N. S.) on pages 231, et seq., is an extended note on ''sufficiency of equitable title to sus-

tain action for injury to real property.'' *Foster* v. *Lumber Co.* v. *Arkansas Valley & Western Railroads,* 20 Okla. 583; *Hueston* v. *Mississippi & Rum River Boom Co.,* 76 Minn. 257, 79 N. W. 92.

The Minnesota court held the right to maintain an action for damages caused by flooding the land of the equitable owner, in that case a vendor under a contract calling for payment of installments not yet performed, where no deed had passed. Examining the rationale of the case, the court says:

''In this case, the injury is wholly to the plaintiff. He will have to pay his vendor the full contract price, notwithstanding that the premises may have been depreciated in value by the trespass.''

Compare this case with our own case of *Rosenstock* v. *The Home Insurance Company,* 82 Miss. 674, 35 So. 309, where the court summing up its holdings on the subject of the titles of vendor and vendee, where the possession has been given the vendee, the vendor retaining the legal title as security for deferred payments, say that in such cases, the vendee is the equitable owner, and the vendor is a mere trustee of the legal title. How much stronger is this case where the vendor had been fully paid, and possession taken. As between McClung and the plaintiff, who owned the property? Whose property was injured? Certainly the plaintiff's.

We have long since passed the period in which such a technical thing as the nondelivery of a deed may defeat the recovery of damages for injury to property, admittedly plaintiff's, when no conflicting equities and no chance of being misled appear. Compare also the cases cited in section 111 of the note of *Russell* v. *Myer,* 47 L. R. A. 639, to wit: *Carney* v. *Reed,* 11 Ind. 417, and *Gulf, C. & S. F. R. Co.* v. *Clarke,* 51 S. W. 962, where similar direct holdings that an equitable title will support an action for permanent injuries to the freehold. We may summarize as follows:

The peremptory instruction was granted, as is shown by the opinion of Judge Rodgers, found in the record, on the theory that the plaintiff had not the legal title and the legal title was necessary to support the action brought. This is clearly error on the authority cited, for plaintiff had bought and paid for the land and was in possession. As against all the world, she was entitled to the land and to all damages for injury to the land. It is not necessary to decide whether she had the legal title. A legal title may, of course, be obtained without a deed as in the cases of adverse possession without color of title, but the legal title whether held or not by the plaintiff, was not essential to support this action. The party in whom the record title stood under the holdings of this court were the mere trustees of the legal title, and the plaintiff was entitled to all the beneficial interests in the property, and to be protected against illegal invasions of her interest.

Again, it was clearly shown by unimpeached evidence that a part of the construction causing the damages complained of was finished after the deed was delivered, and, further, that the whole construction, in every part was not completed until after the plaintiff obtained a legal title. The circumstances discussed by the evidence are that the change in grade was a part of the construction of a concrete highway, and that this highway, after the laying of the concrete, which was finished the seventh of December remained roped off and closed to traffic until December 24, 1915. In other words, the work was not finished in any sense as to show what it would be in the end, and what the damage would be, until the 24th of December. We think it an untenable position that any street work can be called finished until the street has been reopened for traffic. We do not think authorities necessary on that point. The erection of the timber barricade, which was an item named in the declaration, was certainly

not made until after the deed was delivered to the plaintiff.    Since the peremptory instruction is not proper unless the defendant has a case which forbids any recovery under the evidence, on the part of the plaintiff, it is certain that this peremptory instruction was improper since the plaintiff claimed damages on account of the erection of this barricade.    Even on the defendant's own theory, we submit that the peremptory instruction was entirely improper, and that the case should be reversed.

Plaintiff, in her direct testimony, established every element necessary to warrant recovery against the city under the rulings of this court, in the cases of: *Vicksburg* v. *Herman,* 72 Miss. 211, 16 So. 434; *Warrant Co.* v. *Reed,* 88 Miss. 395, 40 So. 481.    She established the existence of an old grade with reference to which her storehouse was built, the elevation of the new grade above the old one.    That this was done by the authority of the city, the erection of the barricade complained of, running clear across the front of plaintiff's lot and between her lot and the traveled part of the street, and that this was done directly by the city, through its own employees and also established that these two matters rendered access to plaintiff's storehouse excedingly inconvenient, discouraging, and to a large extent, preventing prospective customers from resorting to plaintiff's storehouse, and also showed ample data for the assessment of damages by the jury.    On the whole case plaintiff proved a case for damages and at the very least, an equitable title in herself from a period of antedating the beginning of the work.    She also proved legal title by deed in herself before the work was completed and any injury could have been ascertained.

We respectifully submit that the case for damages was absolutely made out and the peremptory instruction, which was prompted by an erroneous view of the law, was improper.

*Sykes & Lewis,* for appellee.

Considering that the solution of the first assignment of error renders unnecessary a discussion of the remaining assignments, we will confine this brief to a discussion of it. In doing so, we ask: First, can one having only the equitable title maintain the same action against a trespasser on lands as one who has the entire ownership thereof under a legal title? second, will the equitable title to, unaccompanied by possession of realty, give the right to maintain such action? Third, or must the plaintiff have at the time of the damage complained of, the legal title to the land, declared by a conveyance in writing signed and delivered?

Contending that as appellant—the plaintiff below though she may have had an equitable title to the land at the time of the alleged damage, as testified to only by her father and brother, viz., A. H. and J. W. McClung, yet, as she was not in actual possession thereof under a legal title declared by a conveyance in writing signed and delivered her by J. W. McClung and wife, Beulah, she was not in position to maintain her said action of trespass, we will proceed to consider the authority upon which was based the peremptory charge, the giving of which by the court is complained of.

Before citing the law of this state upon which said charge was based, we will hastily notice some of the authorities of other states as to the right of the owner of an equitable title to realty to maintain a suit for damages against a trespasser.

In *George* v. *Fisk,* 32 N. H. 45, the court held that possession is sufficient to give one the right to maintain an action of trespass *quare clausum fregit.*

In *Olson* v. *Minnesota & N. W. R. Co.,* 89 Minn. 280, it was held that a purchaser under an executory contract, entitled by implication to the right of possession, but not in actual possession, could not maintain an action for trespass to the realty, for the reason that

the constructive possession was in the vendee as the owner of the legal title.  In the instance case Jas. W. McClung and wife were continuously in actual possession of the property during the period in which the work was done.

In *Smith* v. *Price,* 42 Ill. 399, it was held that when the equitable title rests upon an executory contract of purchase which has not been completely performed by the purchaser, the right of the latter to maintain the action depends upon his right of possession under the contract.

In *Newman* v. *Mountain Park Land Co.,* 85 Ark. 208, 122 Am. St. Rep. 27, it was held that though a vendee under an executory contract not in possession of the land might maintain against the vendor an equitable action for waste, he must have the legal title to or be in actual possession of the land.  In the instant case the plaintiff had neither, but Jas. W. McClung had the legal title and was in actual possession.  The same was held in *Baskerk* v. *Dunlap,* 2 Ohio Dec., 263.

The nearest approach to holding that possession is not necessary for one having an equitable title, to maintain an action for trespass to land, coming under our observation, is the case of *Russel* v. *Myers,* 7 N. D. 335, 47 L. R. A. 637, wherein it is held that one who has the equitable title and the right to call for the legal title may, as against a trespasser, maintain the same action as one having the entire ownership of land, legal and equitable.

So it appears that, the courts of other states are not uniform in their decisions on the question germane to the one involved in this appeal.  This variance is doubtless accounted for by a variance in the laws of the several states from which those decisions emanate.

However this may be, our contention is that, in this state the foregoing authorities holding that possession without title will support the action of trespass against an intruder; or that one having the equitable title with

the right to call for the legal title, may, as against a trespasser, maintain the same action as one who has the entire ownership of land, cannot control. In this state we have a statute, 2763, Code 1906 (Hemingway's Code, section 2267), which provides that "an estate of inheritance or freehold . . . in lands shall not be conveyed from one to another unless the conveyance be declared by writing signed and delivered."

That statute is supplemented by section 4775 of the same Code, which prohibits the bringing of "an action whereby to charge a defendant or other party upon any contract for the sale of lands, tenements or hereditaments . . . unless the promise or agreement upon which such action may be brought, or some memorandum, or note thereof shall be in writing, and signed by the party to be charged therewith, or some person by him or her thereunto lawfully authorized."

Now, as the work complained of, and for which damages are sought by the appellant, was wholly done between the——day of November and December 4, 1915, during which time J. W. McClung and wife were in possession of the premises, and before the 9th day of December, 1915, on which latter date appellant first was invested with the legal title, our contention is that McClung and wife and not Mrs. Funderburk, were the only proper parties to maintain a suit for such damages as may have been occasioned to the realty by reason of said work. And, in this contention we feel sustained by the construction placed by the court on said sections 2763 and 4775, as set out in the case of *Corinth Bank & Trust Co.* v. *Wallace,* 71 So. 267.

That case cites with approval the cases of *Claiborne* v. *Holmes,* 51 Miss. 146; *Steel* v. *May et al.,* 102 Mich. 274, which are to the effect that, the possession by Jas. W. McClung—later the vendor of appellant as the professed tenant of appellant during the time of the work complained of, was not notice to third parties of appellant's equitable title, if such she had, and

that he and wife, and not appellant, were the proper parties to maintain a suit for the alleged damages to the premises.

*William Baldwin,* for appellee.

The court will recognize that the whole alleged contract and agreement of sale and purchase would have been an absolute nullity under our Statute. of Frauds, Code of 1906, section 4775 and section 2763, even so far as binding this one of the vendors, J. W. McClung, if plaintiff had not only paid the one thousand dollars but carried out the proposition and assumed payment of his debts because wholly verbal. *Fisher* v. *Kuhn,* 54 Miss. 481. But plaintiff did not perform her part so as to bind J. W. McClung, even as a matter of ordinary honesty and fair dealing.

It is submitted that prior to his deed of conveyance, dated December 9, 1915, and executed by J. W. McClung on December 10, 1915, and Mrs. Beulah McClung on December 18th, by which the lot claimed to be damaged was conveyed to plaintiff, that plaintiff had no rights on the face of the earth in the lot. So far as her rights were concerned, they were simply such rights as arose to her from a contemplated trade for the lot, made with one of the vendors of the lot, completion of which depended absolutely upon four things to be done in the future: First, the concurrence by Mrs. Beulah McClung with the parol agreement for the sale of the lot for the considerations named; second, the carrying out by plaintiff of the agreement made for the purchase of the lot by paying the agreed consideration that is the payment of the one thousand dollars and assuming the debts of J. W. McClung; third, the final or legal acceptance by the vendors of this proposition of sale of the lot of her and her husband; fourth, the execution of the deed by them to plaintiff.

Here we had an offer for the sale of the lot upon certain terms. The offer and acceptance was an abso-

lute nullity under our Statute of Frauds because entirely verbal, not one word in writing, and it is not claimed that the terms of the offer for sale of the property were ever complied with before December 18, 1915, when the deed to plaintiff to the lot was executed.

There is nothing uncertain about what constitutes under the law an equitable title. It is when the party, though not clothed with the legal title to property, yet has such rights in the property as amounts to complete beneficial ownership; and such being so the law considers the legal title but the shadow that follows the legal title and hence in many ways recognizes the right of the holder thereof.

This equitable title may exist in two classes: First, when it is intended and contemplated in the creation of the equitable title, whether by will, deed or otherwise, that the separation of the legal title should continue permanently separate from the beneficial ownership in the *cestui que trust* and be vested in some trustee selected to hold the legal title for the use of the beneficiary; and second, when it is not intended that the legal title should be separated permanently from the equitable title. This may arise in instances where, under bond for title or other legal agreements to convey property, the purchaser has a right upon his compliance with the condition of purchase to demand the legal title, or it may arise and often does in those cases of involuntary trusts or constructive trusts that the law presses down upon a party *in invitum,* in that large class of cases known as resulting trusts. This question is ably discussed by Mr. Pomeroy in his most excellent treatise upon equity jurisprudence, when he defines what is an equitable title. 1 Pomeroy, Equity Jurisprudence (3 Ed.), secs. 147 and 148. It is hence submitted that plaintiff had no claim for damages done to this lot before her rights commenced when this deed was executed to her, which was on December 10, and

December 18, 1915, respectively, being the dates of the acknowledgments of the vendors to the plaintiff.

And that the grading and cement surface on the street after the grading was finished, being completed on December 7, 1915, that this plaintiff had no right of recovery for such damage already consummated; but that such right of action lies for such damages in her vendors, J. W. McClung and Mrs. Beulah McClung. And that plaintiff's right of action against the city of Columbus can only be for such damage as was done by the city after she became owner of the lot on December 10 and December 18, 1915.

The appellant in brief of counsel, however seems to regard as the rock of his salvation, the fact that the city authorities erected a fence or railing along part of the side of the cement work. It appears from the testimony that the city authorities did have this fence or low railing placed along the edge of the cement road. It will be noted, however, that this railing was placed not at all along the edge of the street but only along the cement center of the street, the street proper not being fenced in at all. This was done to prevent heavy wagons from crumbling off the edge of the cement in going along the edge and too close to it. This low fence or railing on the side of the cement center of the street, however, it cannot be contended, cut off access of this lot to the cement center of the street. A foot traveler could step over it any where and the railing was only along part of the cement center of the street, leaving ample open space where there was no sort of obstacle to prevent vehicles going on the lot from the cement part and nothing to prevent access to the street itself.

It will thus be apparent how unfair is any argument that this lot in controversy was caged in from the street or fenced away from it to its injury.

COOK, P. J., delivered the opinion of the court.

The appellant was the plaintiff in the trial court, and in her declaration she demanded damages from the city of Columbus. The declaration avers that the plaintiff was the owner of a certain described lot of ground fronting on "Main street," and on this lot had been erected a storehouse and other improvements; that prior to the change of grade in Main street the property was worth six thousand dollars, and had a rental value of sixty dollars per month; that after the grade of Main street was changed, and because of barricades erected on the street ingress to and egress from the storehouse was made so difficult, that the value of the property diminished four thousand dollars.

The city filed a plea of general issue, and thereunder gave notice of certain special defenses, to wit: (1) That that portion of Main street where graded and complained of is a part of the hill and steep ascent of many hundred feet in length leading up from the public bridge spanning the Tombigbee river, and by reason of its steep ascent was unsuited as a roadway for loaded vehicles, and somewhat difficult of ascent, particularly, in bad weather; that to remedy this defect a competent engineer was employed by the city to properly grade and improve said street by raising the grade and by placing guard rails on the retaining sides thereof to protect the public from possible mishap; that evidence would be produced to show that the damages claimed by plaintiff are ridiculously exorbitant and unreasonable; that evidence would be introduced to show that the value of the property had been improved and benefited by the grading.

Generally speaking, the evidence for plaintiff sustained her claim for damages, while the evidence for the defendant tended to show that plaintiff's property was not greatly damaged.

It will be seen that plaintiff was proceeding upon the theory that the city had damaged her property for the benefit or use of the public, and that she introduced evidence to prove her claim, and if there was nothing more in this case, it would be clear that the learned trial judge erred when he peremptorily instructed the jury to find for defendent. If the city damaged plaintiff's property for the general welfare, the public must compensate her for her loss—it would be unfair, of course for the individual to bear the entire burden.

But there is another question presented by this record which we will now proceed to examine. This question is argued here, and it is probable that the trial court based his directions to the jury upon that question.

The record shows that the plaintiff was not the owner of the legal title to the property when the grading of the street was done. The record discloses that she had bargained for and paid for the property, but she had no deed of conveyance from the former owner, but she had rented the property to the former owner, and he was in possession of the storehouse. Plaintiff had the equitable title to the property, but did not possess the legal title thereto. If it was necessary to take or damage the property for the public use, the city could and should have instituted the proper proceedings to exercise that power—but the city does not admit that it either took or damaged the property—but it seems to us that the evidence, or the weight of evidence, strongly tends to show that the property was damaged, at least, temporarily.

There was some opinion evidence to the contrary. It appears also that the barricades remained after the plaintiff had received the legal title to the land, and that the egress and ingress from and to the store was seriously impaired. This fact alone makes the peremptory instruction erroneous. We also believe that, under the facts of this case, the plaintiff had title and posses-

sion which was sufficient to support a claim for damages. She had the equitable title and possession from the beginning, and afterwards procured the legal title.

*Reversed and remanded.*