Mississippi State Highway Commission *v.* Tisdale et al.

No. 41756 April 17, 1961 128 So. 2d 745

*Beard, Pack & Ratcliff,* Laurel, for appellant.

*Paul G. Swartzfager, George D. Maxey,* Laurel, for appellees.

Kyle, J.

This case is before us on appeal by the Mississippi State Highway Commission from a judgment of the First Judicial District of Jones County affirming with a remittur, a judgment of the county court of said county rendered in favor of Charles O. Tisdale, et al., as compensation and damages for the taking of a strip of land, containing 14.67 acres, for right of way purposes for the construction of a new interstate highway running through and across a part of an 86-acre tract of land owned by the said Charles O. Tisdale and his wife and situated near the village of Moselle, in said county. The case was tried in the county court, where a judgment was rendered for the sum of $7500. On appeal by the State Highway Commission to the circuit court, that court found that the judgment was based in part on evidence that should not have been considered by the jury; and that a fair trial had not been accorded to the State Highway Commission; and the court ordered that the judgment of the county court be reversed, unless the defendants entered a remittur in the amount of $2500 within a period of twenty days. The defendants agreed to enter such remittur, and the judgment of the county court was affirmed for the sum of $5,000. From that judgment

the State Highway Commission has prosecuted this appeal.

The record shows that the land owned by Tisdale and his wife is an irregular shaped parcel of rural land, which consists of approximately 53 acres off of the west end of the S½ of the NW¼ of Section 35, Township 7 North, Range 13 West, and approximately 33 acres in the NE¼ of the SW¼ of said Section 35 lying west of the present U. S. Highway No. 11. The two parcels are joined together near the center for a distance of about 440 feet. The strip of land sought to be condemned and taken for right of way purposes is a strip of land approximately 395 feet in width, running in a northeasterly and southwesterly direction through and across the above described 53-acre tract, and two small easement areas lying immediately west of and adjoining the 14.14 acre strip, which are to be used for the purpose of disposing of muck removed from the roadbed. The two easement areas contain in the aggregate 0.53 of an acre. Approximately 16 acres of the 53-acre tract will be left on the west side of the new highway. Access rights to the new highway are being taken; and after the taking there will be no outlet from the 16 acres to a public road. There were no buildings or other improvements on the 14.67 acres of land sought to be condemned or on the 16 acres lying west of the new right of way. The remaining 22 acres of the 53-acre tract, lying east of the new highway, appears to be open land, and at least a part of it is under fence.

The above mentioned 33-acre tract of land, which lies southeast of the 53-acre tract, is bounded on the southeast for a distance of several hundred feet by U. S. Highway No. 11, an improved interstate highway. Tisdale's dwelling house is located on said highway. There are three gravel roads which traverse the 33-acre tract. One of the gravel roads is "Old" Highway No. 11, which runs north and south across the 33-acre tract, and the record

shows that there is an old dwelling house located on that road. Neither the present U. S. Highway No. 11 nor the "Old" Highway No. 11 will be disturbed in any manner by the construction of the new highway.

B. S. McLemore, right of way agent for the State Highway Commission, and a graduate of Mississippi State College with several years experience in agricultural extension work, testified that 9 or 10 acres of the Tisdale land lying between the present U. S. Highway No. 11 and "Old" Highway No. 11 was very good pasture land; that the next 22 acres of the Tisdale land lying immediately northwest of "Old" Highway No. 11 was open land, but its soil was "very heavy"; that lying north and west of "Old" Highway No. 11 extending to the easterly boundary line of the new highway right of way, there was approximately 20 acres of crop land, which would not be disturbed by the new highway; that there was one barn on the Tisdale property, which was located in the southeastern part of the 86-acre tract, not far from the Tisdale house. McLemore stated that the northwest part of the Tisdale land through which the new right of way ran was rough cutover land with deep ravines, the difference between the lowest elevation and the highest elevation on the strip to be acquired for right of way purposes being somewhere in the neighborhood of 70 feet; that the 15 or 16 acres of land lying west of the new right of way, which was being severed from the remaining part of the Tisdale tract, was cutover woodland, having no timber of commercial value on it; that there was no improved pasture land included in the taking. McLemore stated that the parcel of land lying between the present U. S. Highway No. 11 and the "Old" Highway No. 11 was not under fence; that the next 22 acres lying immediately west of "Old" Highway No. 11 was not under fence; that another 20 or 25 acres extending westwardly toward the woodland was under fence, and he had seen hay being harvested in that area. He stated

that there was very little fertility in the land which was being taken for right of way purposes, and the land was not usable for beef cattle for the reason that it was entirely "too heavy at the top." McLemore stated that Tisdale's dwelling house was approximately 1900 feet from the nearest point on the new highway right of way; that the other dwelling house was a little over 1000 feet from the right of way; and that the barn was approximately 800 feet from the eastern edge of the right of way. He stated that there was a spring on the 16 acres lying north and west of or within the new right of way. On cross-examination McLemore testified that about 20 or 25 acres of the Tisdale land lying on the east side of the new highway right of way appeared to be under cultivation to some extent at the time of the trial.

Two witnesses testified for the State Highway Commission concerning the value of the land before and after the taking. L. C. Kirkland, who was born and reared in Jones County and was operating a farm north of Eastabutchie, testified that he had served for many years as a professional appraiser for the Federal Land Bank and other Federal agencies, and that he had also had experience in estimating saw timber and pulpwood. He testified that the Tisdale property as a whole would be classified as hill land, although some of it was in a swamp; that there were some patches of cultivated land on it; that the soil was a sandy type soil with a clay subsoil. He stated that there was no merchantable timber on that portion of the land which was being taken for right of way purposes or the 16 acres lying west of the new right of way. He estimated that about 26 acres of the Tisdale land was suitable for plowing. He stated that only one acre of land that was suitable for cultivation was being taken for right of way purposes. Kirkland testified that, in his opinion, the fair market value of the property remaining after the taking would be $6,600, or a difference of $1400. That amount included the depreciation in value

of the 16 acres lying west of the right of way. On cross-examination Kirkland stated that if he were to assign a separate value to the 16 acres before the taking he would estimate its fair market value at $550, or more than twice what it would be worth after being severed from the remaining part of the Tisdale tract. He stated that in his opinion the Tisdale property was not suitable for cattle raising, that the farm was not large enough and was not developed to the point where the owner could make a living growing cattle on it.

Clarence Boone, local real estate agent, who had made appraisals of farm lands in the county for loans by the Farmers Home Administration, testified that he was familiar with the fair market value of farm property in the First Judicial District of Jones County, such as Mr. Tisdale's place, and that in his opinion the fair market value of the property before the taking was $8,000, and after the taking $6,500, a difference of $1500.

The only witness who testified for the appellees was M. P. Carter, who testified that he had lived around Ellisville for 16 years; that he had been employed as an agricultural teacher at Whitfield school, at the Moselle School, and at the Jones County Junior College; and as a sideline to his teaching, he had written fire and automobile insurance. At the time of the trial he was serving on a committee which approved or disapproved loans for the National Farm Loan Association, although he did not make actual appraisals of property for the association. He stated that he had owned a place in Jones County and had sold some property off of it since 1953. He stated that he had made an inspection of the Tisdale property. He described the Tisdale dwelling house as being equipped with Butane gas, and there was a water well near by. There was also another four room house on the property which was equipped with a gas heating system and supplied with water from a natural spring. He stated that there was one plot on the Tisdale place

"back up in this section", which he believed would produce almost anything that a person would like to grow. The other land would have to be adapted to early crops or late crops, and the yield would depend on the amount of rainfall. He stated that the soil in that area was a sandy soil which did not hold water well. He stated that the new highway right of way would take two acres of good land. Carter testified that, in his opinion, the value of the Tisdale land, with the improvements thereon, before the taking was $22,375, and that its value after the right of way was taken would be $14,725, or a difference of $7,650.

The appellant's attorneys have assigned and argued these points as grounds for reversal of the judgment of the lower court: (1) That the circuit court erred in not reversing the judgment of the county court and trying the cause de novo because of prejudicial statements made by the appellees' attorney in his cross-examination of one of the witnesses for the State Highway Commission to the effect that Mr. Tisdale was receiving rental payments on his land under the Government Soil Bank Program in the amount of $85 per acre; (2) that the circuit court erred in not reversing the judgment of the county court because of the county court's wrongful admission of evidence regarding the use of the land for raising cattle; and (3) that the court erred in overruling the appellant's motion for a new trial on the ground that the verdict of the jury was contrary to the evidence, and so grossly excessive as to evince bias and prejudice and to shock the enlightened conscience. The appellant's attorneys say that the error of the circuit court in not awarding a new trial for the reasons stated above was not cured by the entry of a remittur of only $2500.

 The first assignment of error is predicated upon the action of the defendants' attorney in injecting into the record during his cross-examination of the witness L. C. Kirkland the idea that the government was pay-

ing Mr. Tisdale $85 an acres as rental for the land being taken for right of way purposes. While the witness was being cross-examined by the defendants' attorney he was asked the following question: "Well don't you know that the government has been paying Mr. Tisdale eighty-five dollars an acre for that right up in the northwest corner in the Soil Bank Cotton acreage - -".

We think the question was highly improper for the reason that the question was designed to create in the minds of the jury the false impression that Tisdale was receiving Soil Bank payments in the amount of $85 per acre for the land being taken for right of way purposes, when there was no proof in the record to show that he was in fact receiving Soil Bank payments for any of the land. The petitioner's attorney promptly objected to the question, and the court overruled the objection. Kirkland then stated that he knew nothing about such Soil Bank payments; and the defendants offered no evidence to show that Tisdale was getting $85 per acre rent for any land placed in the Soil Bank. The court later reconsidered its ruling on the competency of the evidence relating to the Soil Bank payments, and instructed the jury to disregard all questions and statements relative to the land being in the Soil Bank. But the harm had been done; and we think that it cannot be said with any degree of certainty that the jury did disregard the reference to the alleged Soil Bank payments. It is not necessary for us to decide whether the action of the defendants' attorneys in injecting the Soil Bank payments into the trial would have constituted reversible error by itself. But that error, coupled with the fact that the amount of the verdict was grossly excessive, constituted sufficient ground for reversal of the judgment of the county court. The verdict of the jury, in our opinion, was indeed so grossly excessive and unreasonable in the light of the undisputed facts concerning the nature and the characteristics of the land taken and

the land damaged as a result of the taking as to shock the enlightened conscience. We think the circuit judge was in error in failing to reverse the judgment in toto and remand the case to the docket for a new trial.

■■ There is no merit in the appellant's contention that the county court erred in admitting testimony concerning the use that might be made of the land for raising cattle. Only a small part of the land within the right of way itself appears to have been suitable for the grazing of cattle; but the land was rural land and although it may have been of little value for grazing purposes, we think it cannot be said that testimony relating to its usability for grazing purposes, whether favorable or unfavorable, was irrelevant.

For the reasons stated above the judgment of the lower court is reversed and the cause remanded.

Reversed and remanded.

*McGehee, C.J.,* and *Arrington, Ethridge* and *Rodgers, JJ.,* concur.