MISSISSIPPI STATE HIGHWAY COMMISSION *v.* HERRING et ux.

No. 41934 October 2, 1961 133 So. 2d 279

October 23, 1961 133 So. 2d 895

*Jesse W. Shanks,* Purvis, for appellant.

*William E. Andrews,* Purvis; *Edward J. Currie, Sr. & Jr.,* Hattiesburg, for appellees.

**732**

Rodgers, J.

The Mississippi Highway Commission filed an application for condemnation of 13.2 acres of land belonging to the defendants in an eminent domain court in Lamar County, Mississippi. The jury awarded the defendants a judgment for $10,820, and from a judgment entered as a result of this verdict, the Commission appealed to the Circuit Court of Lamar County, where the case was again heard and the jury returned a verdict in favor of the defendants in the sum of $13,887. After the judgment was entered, the appellant made a motion for a new trial. The motion was overruled, and the appellant has appealed to this Court, and complains that (1) the verdict of the jury in the circuit court was contrary to the law, and against the great weight of evidence introduced in the trial, (2) the verdict and judgment were not based upon credible evidence, and (3) that the verdict is so excessive as to shock the enlightened conscience and was the product of bias, prejudice or sympathy.

We have carefully reviewed the testimony and the procedure in the trial court, and we are persuaded that there is only one question to be determined here, and that is: Is the verdict so excessive as to shock the enlightened conscience, or so excessive as to evince passion or prejudice?

The record in this case reveals that on June 23, 1960, the defendants, Sherlock J. Herring and his Wife, Mary Florence Herring, owned 120 acres of rolling land in a rural section of Lamar County, Mississippi. This prop-

erty is located about three and one-half miles northeast of Purvis, Mississippi. Defendants own three 40-acre blocks running east and west. The highway right-of-way, sought to be taken, is a strip of land about 370 feet wide running through their east forty from a point near the southeast corner and across the northeast corner in such a manner as to cut off 9.87 acres of land in the southeast corner of the east forty-acre block of land. This strip of land which has been taken is 13.2 acres, and forms a "cut" across the entire east forty. On the south end of the "cut" the highway will be, when completed, six feet below the surface of the surrounding land, and will finally reach a depth of 35 feet at the north end of defendants' east forty.

The defendants' dwelling, outhouses, barn, sheds and residential improvements are located on the line between defendants' middle and their east forty, and is on the south side of a gravel road which passes across defendants' east forty from the northwest to southeast. This gravel road is known as the "Slade Road", and will be permanently blocked by the new interstate highway, so that defendants will be unable to use the "Slade Road" to the east and south. The new interstate highway is a limited access highway, and the defendants will not be permitted to enter the interstate highway directly from their property, but will be required to go to a point of entrance several miles away from their property in order to travel along the highway passing through their land. The defendants will be cut off from the land on the east side of the highway. This land will therefore be of little use to the defendants, so that, in effect, the defendants are losing the use of 23.07 acres of their east forty.

The evidence shows that there are 3.25 acres of cultivatable pasture land, 85 acres of woodland, and a two-acre house site. The improvements upon the property consist of a good five-room dwelling house, in which defendants have installed electric utilities, butane gas heaters and equipment, a bathroom and sewer system as

well as running water brought into the house by an electric pump from a well located on the property. It is also shown that there are a barn, two tool sheds, a smoke-house, a chicken house and a small "office building." The defendants have planted an orchard and about 1,000 tung trees on the property. There are 65 acres of land under fence, and there is a sparse growth of young timber on the property. The dense part of the timber was located on the strip of land condemned for highway use.

The appellant, Highway Department, introduced three witnesses, and defendants introduced two witnesses, who testified as to the value of the defendants' property, and the damages caused by the condemnation of the property for highway purposes. The defendant Sherlock J. Herring took the stand in his own behalf and testified as to the damages. All of these witnesses based their testimony on the value of the property before the taking, less the value of the property after the taking in determining the damages resulting to the property because of the condemnation. A short outline, or compendium, of the testimony introduced by both sides, with reference to the value of defendants' property, is as follows:

| Witness | Value Before | Value After | Resulting Damage |
|---|---|---|---|
| For the Highway Department | | | |
| J. W. Morgan | $20,000.00 | $13,500.00 | $ 6,500.00 |
| B. J. Beard | 22,000.00 | 16,500.00 | 5,500.00 |
| Paul Rayburn | 18,750.00 | 11,600.00 | 7,150.00 |
| For Defendant | | | |
| O. E. Hart, Sr. | $35,000.00 | $15,000.00 | $20,000.00 |
| Ben Courtney | 42,908.50 | 29,995.00 | 12,912.50 |
| Sherlock Herring | 35,000.00 | 17,500.00 | 17,500.00 |

It will be noted from the testimony of the defendant Sherlock Herring that he claimed his property would be damaged $17,500, exactly one-half of its former value of $35,000. Ordinarily the defendant is in a better position to know the value of his property than any other witness,

and from the value put on the property by Mr. Herring, it would appear that the witness Hart's estimate of $20,000 would be $2,500 over half the value of the property assessed by the owner, and that Mr. Ben Courtney's estimate of damage of $12,912.50 is more nearly the damages assessed by the jury to the property. The defendant was asked why he said in the eminent domain court below that he had been damaged $15,000, and he replied "I hadn't seen what they were going to do to my land." His meaning is quite clear. He had not seen that this highway was going to cut down below the surface of his land from six to thirty-five feet, and that ingress to and egress from his property would be impossible.

■■ For many years it has been the accepted rule in this State that the blocking of ingress and egress to and from the property of an adjacent landowner is an item of damages to be recovered by the landowner. Funderburk v. City of Columbus, 117 Miss. 173, 78 So. 1; City of Jackson v. Wright, 151 Miss. 829, 119 So. 315; Quin v. Miss. Highway Commission, 194 Miss. 411, 11 So. 2d 810; Wheeler v. State Highway Commission, 212 Miss. 606, 55 So. 2d 225; Miss. Highway Commission v. Spencer, 233 Miss. 155, 101 So. 2d 499; Miss. Highway Commission v. Finch, 237 Miss. 314, 114 So. 2d 673; Carney v. Miss. Highway Commission, 233 Miss. 598, 103 So. 2d 413. ■■ This Court has also pointed out in the case of Miss. Highway Commission v. Burwell, 206 Miss. 490, 39 So. 2d 497, that the inconvenience of nonaccess to that portion of defendants' property condemned is an item which may be used along with other items in calculating the overall damages to the fair market value of the property after taking because of the diminished saleability of the property; nevertheless, the emotion engendered by the sight of the deep cut, and the appearance of the property condemned because of the grading, is not an element of damage. New Orleans, Baton Rouge, Vicksburg & Memphis Railroad Company v. Brown, 64 Miss. 479, 1 So. 637. It is obvious to this Court that the defendants'

property is not damaged anything like one-half the value before the condemnation proceedings.

Therefore, since this case is to be tried again, we refrain from further comment on the testimony appearing in the record except to point out that there was no testimony in this record of any comparable value as shown by local sales of land, although it was shown that there were recent sales of land near the property here sought to be condemned.

■■■ The Mississippi rule as to damages in eminent domain proceedings established by subtracting the fair market value of property after taking from the fair market value of property before condemnation does not mean that expert witnesses as to "value" are not permitted to itemize values on which they base their estimate and opinion. This Court has pointed out that items of value should be permitted in evidence for the purpose of establishing values the witness took into consideration in determining the over-all fair market value before, and the over-all fair market value after, the taking. Miss. Highway Commission v. Burnell, supra; Miss. Highway Commission v. Peterson, 238 Miss. 63, 117 So. 2d 452; Miss. Highway Commission v. Strong, 240 Miss. 756, 129 So. 2d 349.

In the case of Beard v. Williams, 172 Miss. 880, 161 So. 750, and again in the case of Belk v. Rosamond, 213 Miss. 633, 57 So. 2d 461, this Court said: "The right of the court to grant a new trial whenever convinced from the evidence that the jury has been partial or prejudiced, or has not responded to reason after a full hearing of the testimony, was recognized under the common law; and the duty of the court to grant a new trial in such case is so well settled that no court may refuse to exercise such power when fully convinced of its duty to do so." In the case of Miss. Highway Commission v. Tisdale, 241 Miss. 16, 128 So. 2d 745, this Court pointed out that it was the duty of the trial judge to set aside a verdict and grant a new trial when the amount of the verdict was grossly

excessive and so unreasonable as to shock the enlightened conscience.

 This Court therefore holds after a careful consideration of this record that the verdict of $13,887.90 is so grossly excessive as to evince bias, passion and prejudice by the jury and cannot be affirmed. Miss. Highway Commission v. Valentine, 239 Miss. 890, 124 So. 2d 690.

The judgment of the circuit court is therefore reversed and the case is remanded for a new trial unless within fifteen days from this date the appellees accept a remittitur of three thousand dollars ($3,000).

Reversed and remanded unless appellees accept specified remittitur.

Affirmed with remittitur; otherwise reversed and remanded for a new trial.

*McGehee, C. J.,* and *Arrington, Ethridge* and *McElroy, JJ.,* concur.

## ON MOTION TO CORRECT JUDGMENT.

On a former day of this Term, this Court reversed judgment of the Circuit Court of Lamar County, Mississippi, and remanded the case for a new trial unless within fifteen days from the date of the judgment the appellees accepted a remittitur of $3,000. An order was accordingly entered on the 2nd day of October 1961, and thereafter the appellees entered their remittitur. The appellees now contend by this motion that the court should have entered a judgment granting them 6% interest on the original judgment in the Circuit Court of Lamar County dated July 14, 1960. The appellees are correct in their contention as heretofore pointed out in the case of Mississippi State Highway Commission v. Burwell, et al., 206 Miss. 496, 39 So. 2d 497, 40 So. 2d 263. See also the following authorities: State Highway Commission v. Mason, 192 Miss. 576, 4 So. 2d 345, 6 So. 2d 468; Sec. 17, Miss. Constitution 1890; Grillis v. Patrick, 214

Miss. 747, 59 So. 2d 341; Sec. 39, Miss. Code 1942, Recompiled.

██ ██ This Court has an inherent right to correct its judgments. See Claughton v. Ford, 202 Miss. 361, 32 So. 2d 751; Wilson v. Town of Handsboro, 99 Miss. 252, 54 So. 845, Ann. Cas. 1913E, 345.

The motion to correct judgment is therefore sustained so as to assess 6% interest on $10,887.90 from and after July 14, 1960, the date of the original eminent domain judgment, and the cost will be assessed against appellant, but no damage will be allowed either on appeal to the circuit or this Court.

Motion sustained.

*McGehee, C. J.*, and *Arrington, Ethridge* and *McElroy, JJ.*, concur.