MISSISSIPPI STATE HIGHWAY COMMISSION *v.* TISDALE, et al.

No. 42315        April 23, 1962        140 So. 2d 92

*Beard, Pack, Ratcliff & Dillard,* Laurel, for appellant.

*Paul G. Swartzfager, George D. Maxey,* Laurel, for appellees.

Lee, P. J.

This is the second appearance of this cause in this Court. The first appeal appears as Mississippi State Highway Commission v. Tisdale, 241 Miss. 16, 128 So. 2d 745. In that case, a jury in the county court had awarded damages in the sum of $7,500. On appeal to the circuit court, a remittitur was ordered in the sum of $2,500 on pain of reversal. The defendants agreed to enter such remittitur and the judgment was affirmed for $5,000. The Commission appealed to this Court, and

the cause was reversed and remanded for a new trial because of the action of the defendants' attorney in injecting an improper matter during cross-examination, and because the verdict of the jury was "so grossly excessive and unreasonable in the light of the undisputed facts concerning the nature and the characteristics of the land taken and the land damaged as a result of the taking as to shock the enlightened conscience."

The jury in the circuit court, on the retrial, fixed the damages and interest at $6,943.85; and from the judgment entered thereon, the Commission appealed.

The Tisdales owned an irregularly shaped parcel of land comprising about 86 acres. It is situated on U. S. Highway No. 11 fifteen miles from Laurel, sixteen miles from Hattiesburg, and six miles from Ellisville. The right of way, condemned for new Interstate Highway 59, runs through the northwestern portion, and consists of slightly more than 14 acres. Approximately 16 acres lies west of the right of way, and is without any access whatever. The remaining 56 acres is east of the right of way. All improvements are located on the 56 acres and are not disturbed.

On the first trial, the Commission offered three witnesses: B. S. McLemore, its right of way agent; L. C. Kirkland, a professional appraiser for the Federal Land Bank and other Federal agencies; and Clarence Boone, a local real estate agent. In the opinions of Kirkland and Boone, the damages, consisting of the difference in the value of the property before and after the taking was $1,400 to $1,500. The testimony of these witnesses was detailed in the opinion and will not be set out again.

The only witness who testified at the instance of the landowners in that trial was M. P. Carter, who was a teacher, wrote fire and automobile insurance as a sideline, and had served on a committee which approves or disapproves loans for the National Farm Loan

Association. He described the improvements on the place and was of the opinion that the difference in the value of the property before and after the taking was $7,650.

Since the issue was a sharply disputed one, this Court must necessarily view the evidence for the appellees in its most favorable light.

On the retrial, the same witnesses testified for the Commission. McLemore's evidence was practically the same as in the first trial. However he stated that about 40 acres was good land. The balance was heavy and too steep for cultivation. There were scattered pines and hill hardwood on the severed 16 acres. It would be impossible to carry many head of cattle on the place. He admitted that there were several springheads east and west of, and in, the right of way.

Kirkland's evidence was also substantially the same as in the first trial. He testified that row cropping had about gone out of existence; that the land will grow timber; and that it can be used for cattle, although it is not well-adapted for that purpose. Because of its division into three parcels, it is too small as an economic unit. He said, however, that if he owned the land, he would use it for cattle or cropping. There was no change in Boone's testimony. He based his estimate on 35 acres of open land and 51 acres of woodland.

M. P. Carter did not testify in the second trial. The defendant, Charles O. Tisdale, Angus Folks, who had fenced and farmed the place for several years, and Henry Myers, who had owned a place about three-fourths of a mile from this land, testified for the defendants.

Tisdale, at the time of the trial, was living on the place but was engaged as a salesman. This has been his home for 26 years. According to his testimony he had made as much as a bale of cotton and 75 bushels of corn on some acres of this land. Three years ago he pastured 17 head of cattle and grew corn, cotton, etc., on the land. Three springheads, where the highway

has been constructed, afforded a year-round water supply; and he has no other natural supply elsewhere except during a rainy season. There will be no access whatever to the 16 acres which is separated from the balance of the place. So far as a unit is concerned, he will have left only 56 acres and the 16 acres will be of no value for making a living. Giving his estimate of the before and after values, he was of the opinion that his damage would approximate $10,000.

Angus Folks testified that he had farmed and used the land in past years. In his opinion, 50 to 60 acres was cultivatable and good land. He said that he had made as much as one-half bale of cotton to the acre without fertilizer. He thought the woodland was suitable for pasture. The highway has been constructed over a springhead, which was permanent and sufficient to support twenty head of cattle and take care of other farm purposes. Under his estimate of the value before and after the taking, he was of the opinion that the damage would amount to between $6,000 and $7,000.

Henry Myers, who said that he knew this property well, testified that land in that area could not be bought for less than $100 an acre; and that, in effect, if it is improved or capable of being improved, it brings from $200 to $250 per acre. In his opinion, the land had been fairly good pasture land and, potentially, it could be made very good. The place was suitable for both farming and cattle raising, and, before the springhead in the right of way was disrupted, a continuous flow of running water was afforded which was sufficient in the past to take care of "a pretty good little bunch" of cows. He pointed out that a running spring is more desirable than a well because the spring requires little cost for upkeep. He placed the before value at around $16,000 or $17,000 and the after value at $9,000, or damages of approximately $7,000 to $8,000.

Although the appellant has assigned and argued several alleged errors, including rulings of the trial court in the admission and exclusion of evidence, the Court deems it necessary to respond only to the contention that the verdict was grossly excessive and evinced passion and bias.

The evidence in the present record is in sharper dispute than it was in the first trial. Until three years ago, Tisdale had used this property for both farming and cattle raising. At the time of the trial, he was a salesman and was not utilizing the full potential of the place for either purpose. This does not mean, however, that such uses had been lost or abandoned. Fourteen acres have been actually taken. The value of the 16 acres west of the right of way, because of its inaccessibility, is greatly reduced. As an economic unit, that is, a place to live, to farm, to raise cattle, and to make a living, it has been reduced from 86 to 56 acres. This fact unquestionably lessens the value of the unit. Besides, there was evidence that a natural water supply, adequate for the farm purposes stated, has been destroyed.

Thus the case, in its present posture, appears in a different and more favorable light. ▮▮▮ ▮ The Court is still of the opinion that a judgment for $6,943.85 is grossly excessive. Although, on the former appeal, the Court was of the opinion that a judgment in the amount of $5,000 was grossly excessive and shocking to the conscience, it would not be able to say, on the present record, that a judgment for that amount should be reversed for that reason. If, therefore, the appellees will, within fifteen days, enter a remittitur, reducing the amount of the judgment to $5,000, a judgment in that amount will be affirmed, with interest at the rate of six per cent from the date of the judgment entered here and all costs; otherwise the cause will be reversed and remanded for a new trial.

Affirmed with remittitur; otherwise reversed and remanded.

*Kyle, Ethridge, Gillespie* and *Jones, JJ.,* concur.