Mississippi State Highway Commission *v.* Peterson.

No. 41349 January 25, 1960 117 So. 2d 452

*Matthew Harper, Jr.,* Asst. Atty. Gen., Jackson, for appellant.

*Strong & Smith,* Louisville, for appellees.

McGehee, C. J.

The State Highway Commission instituted this proceeding against the appellees, B. B. Peterson and Wife, Mrs. Myrtle Peterson, to condemn in a special court of eminent domain a small strip of land off the east side of an 87-acre tract of land in Winston County, on which the appellees resided. They owned a total of 160 acres of land but the land other than the 87-acre tract was located in another county, near but not adjacent to, the 87-acre tract on which they lived. The tract sought to be condemned consisted of 1.24 acres and varied in width from about 35 feet at the end in the northeast corner of the tract to approximately 65 feet in the southernmost end of the tract. The strip of land did not divide any part of the land of the appellees from any other part thereof. It was being condemned for highway purposes to widen Mississippi 25, and the taking of the land resulted in providing for the broadening of the existing right-of-way so as to take this strip entirely off the east side of the 87 acres in question, and which taking resulted in the new highway being located nearer to the residence of the appellees; in fact it meant the taking of a part of the unenclosed front yard of the appellees and two of their shade trees located thereon. Mr. Peterson placed the value of the strip taken at approximately $150, but he claimed damages in the loss of his shade trees and in the impairment of the usefulness of his well located near the proposed relocated highway.

Three witnesses introduced by the Highway Commission undertook to fix the before and after value of the tract of land, one of whom placed the fair, cash market value before the taking of the strip at $10,412.75, and its after value at $9,721, with a resultant damage for the taking of $691.75. Another witness placed the value before the taking roughly at $7,000, and its value after the taking approximately $6,500, and gave the damage from the taking as being approximately $600. The other

witness for the Highway Commission fixed the value before the taking at $7,850, and after the taking at $7,043.50, with the resulting damage of $806.50.

These three witnesses were shown to be competent to testify as to the values, based on their prior training and experience.

However, neither of these three witnesses for the Highway Commission took into consideration any damage that may have been done to the water well of the appellees, either due to the fact that they did not consider the same to be materially damaged or merely failed to take the damage into consideration. They did not state why they did not take this item into consideration.

Mr. Peterson testified that he could not place any value on the two shade trees in front of his house, since he did not know of shade trees ever having been sold. Of course there was damage to the appellees by the loss of these shade trees in front of their residence. Mr. Peterson further testified, and in this he was supported by testimony of other witnesses, that in the area of his residence for at least a mile away people had to use cisterns because there is a substrata of limestone or soapstone at approximately 12 feet below the surface of the ground; that unless a water well is obtained above this strata the water beneath the same is unsuitable for drinking purposes, and that the well of the appellees is the only good water well in the area. This testimony was undisputed.

He further testified that he had had a good well for about thirty years and that it was about ten feet deep from the top of the ground; that the water came up within at least one foot of the top of the ground, meaning that he had water in his well a depth of nine feet. Mr. Peterson and his father testified that the grading of the new highway right-of-way nearer to his well had the effect of lowering the water therein four or five feet, but both the father of Mr. Peterson and the appel-

lee, Mrs. Peterson, conceded that there was probably enough water in the well at the time of the trial.

In the special eminent domain court a verdict was rendered in favor of the landowners for $2,250. The Highway Commission appealed from the judgment to the circuit court on the ground that the same was excessive. In the trial in the circuit court the jury, after viewing the premises, rendered a verdict for the landowners in the sum of $4,200.

 It was shown that as many as eight or ten families obtained their drinking water from the well of the appellees, because of the fact that they had been unable to get a good well of drinking water on their own nearby lands. But of course the appellees could not recover damage for their neighbors being deprived of the use of drinking water from the well in question.

 █ Moreover, the appellees failed to make any specific proof as to the before and after value of their 87-acre tract caused by the taking of the strip of land in question. Mr. Peterson estimated that his damages caused by the taking of the strip of land, which he could not contend to be worth more than $150, the taking of his two shade trees and part of the land in front of his house, together with the damage that the opening up of the highway ditch on the north side of the new right-of-way may cause to his well, would be the sum of $5,000.

We have concluded that the verdict in this case is so grossly excessive as to shock the enlightened conscience of the Court and to evince bias, prejudice or favoritism, and that the damages have not been shown by the proper proof as to the before and after value of the tract of land from which the condemned strip has been taken.

The appellees were evidently satisfied with the amount of damages rendered in the special court of eminent domain, since Mr. Peterson testified that he asked one of

the local attorneys for the Highway Commission as to whether or not the Commission would take an appeal (to the circuit court). The reply of the attorney was that he did not think so, and thereupon the landowner cut and utilized the two shade trees which were on the condenmed strip. The case must therefore be reversed and remanded for a new trial.

Reversed and remanded.

*Lee, Kyle, Holmes* and *Arrington, JJ.*, concur.