MISSISSIPPI STATE HIGHWAY COMMISSION *v.* LADNER, et al.

No. 42189          February 19, 1962          137 So. 2d 784

*Matthew Harper,* Asst. Atty. Gen., Jackson; *Tate Thigpen, G. B. Keaton,* Picayune, for appellant.

*Williams & Williams,* Poplarville, for appellees.

LEE, P. J.

The Mississippi State Highway Commission, by a proceeding in Eminent Domain, sought to condemn a right of way over the lands of Joe Glynn Ladner and wife for the relocation and construction of U. S. Highway No. 11 in its conversion into Interstate Highway No. 59. They were awarded $16,000 by the Eminent Domain jury. On appeal, the Circuit Court jury made an award of $25,000. From that judgment, the Commission appealed.

The Ladners owned about 289 acres in the form of a rectangle with a jagged line on a part of the southern boundary. They had an outlet to a public road on the north side of their property. Their improvements, in a normal grouping, consisted of a three room house with an attic and a cellar, an 8 cow dairy barn, another cow barn about 30 by 40 feet capable of holding 1500 bales of hay, and a tool shed. Both the house and dairy barn were wired for electricity and were piped for water. There was also a water trough in the barn lot. The well was between the house and the barns. Eighty-four acres of land was utilized for cultivation and improved pasture. The Ladners had been in the dairy business for several years, until 1954, when bang's dis-

ease hit the herd. Joe said that he also got down with undulant fever, and that these two misfortunes "broke him up". The soil was suitable for growing oats, rye grass, crimson clover, soy beans, watermelons, bahia grass and tung oil nuts.

Alligator Creek has its source just west of the Ladner lands. It runs in a southeasterly direction, cutting off the south 96 acres. The stream itself was not very wide, only 25 to 30 feet, but, when the swamp, with vines, briars, undergrowth and trees, was included, it ranged in width from 250 to 450 feet wide and constituted a natural barrier against access from the north. The Ladners, when they sold some adjacent land to the west, reserved a 30 foot right of way for a road, which enabled them to go around the head of the creek and have access to the lands south of the stream.

In this condemnation proceeding, none of the improvements are taken or disturbed. In the northwest corner of this land, 10.3 acres will be taken. According to the proof, this is good land. No land is cut off or left on the other side of the right of way. The reserved right of way for access to the 96 acres south of the creek will be taken, and it is clear that the Ladners have no way to gain access thereto except over the lands of others. If they continue to own that acreage, it will be necessary to build a dump and bridge if they are to have access thereto. Manifestly, if they could have suitable access to their acreage south of the creek, their unit whether for dairying, farming, or kindred purposes would be only slightly damaged from the loss of the 10.3 acres, which will be actually taken.

The four witnesses for the Commission gave their opinions as to the before and after values. When these were subtracted, their estimates as to the damage ran from a low of $3,500 to a high of $5,765.

On the contrary, the defendant and his four witnesses gave their opinions as to the before and after values

of the land. When these were subtracted, the estimates of damage ran from a low of $22,200 to a high of $40,-775. The witnesses for the defendant said that they arrived at their values largely because of the potential use of the land as a dairy unit, and the loss of the 96 acres south of the creek as a result of the taking of the access right of way to it.

The Commission's engineer gave his opinion as to the most feasible place to make a fill and crossing over the creek. He said that it would have to be about 225 feet long; that he figured out what would be involved in such a project; and that he gave that information to the real estate appraiser for the Commission. Presumably the appraisers for the Commission took this into consideration but the amount thereof does not appear. ██ █ Of course the difference between the before and after values is the measure of damages, as the court has so often held; but, at the same time, the danger of pyramiding damages by a disclosure as to such cost could hardly have arisen in this instance. Miss. State Highway Commission v. Hillman, 189 Miss. 850, 198 So. 565; Miss. State Highway Commission v. Oscar Buren Ladner, No. 42,190, decided February 12, 1962.

██ █ Joe Ladner testified that he bought 80 acres of land south of Alligator Creek in 1954, and he was asked, on cross-examination, what he paid for it. His counsel objected on the ground that seven years had elapsed since the purchase, and such evidence should not be admitted. The court sustained this objection and the evidence was not admitted. The appellant contends that this was reversible error.

In Gowan v. State Highway Commission, 193 Miss. 365, 9 So. 2d 637, the property was purchased on March 28, 1932, and the trial was being held on November 29, 1940. The trial judge held that the price of $10 per acre, when the land was purchased, was admissible. This Court said that, on "the issue of remoteness in

point of time, a wide discretion is vested in the trial court'', and that most of the cases had rejected such evidence as the sales were 8 or 9 years before. For that reason, the opinion said that the Court would have been better satisfied if the trial court had rejected the deed as evidence. The judgment of the trial court was affirmed.

In Gulf Refining Co. v. Davis, 224 Miss. 464, 80 So. 2d 467, this Court held that it was error to exclude evidence of sales which had been made as recently as 4 to 5 years. Likewise in Mississippi State Highway Commission v. Taylor, 237 Miss. 847, 116 So. 2d 757, the property had been purchased in 1954 and the trial was in 1958. The trial court refused to let the appellant introduce the deed to Mrs. Taylor, which showed the purchase price. This was held to be error. The opinion cited the Gowan and Davis cases, supra, and 5 Nichols, Eminent Domain, 3d Ed. Section 21.2.

The 80 acres was cutover land when it was purchased. It is still cutover land. Since it has not been developed in any way after its purchase, the cost at that time should have been of material assistance to the jury in fixing its present value. Under the circumstances that evidence should have been admitted. It was error to exclude it.

██ ██ During the cross-examination of Ferris E. Tate, a witness for the defendants, he was being asked about his estimate as to the value of land where he had sold 1010 acres for $100,000, the lawyer saying: "Q. And this place with only approximately 287 acres you put a value on it of $61,325.00, isn't that right? A. One of the reasons I valued it at that price was because you all bought some from John L. Landrum up there and gave him . . . Q. We object to that, if the court please. A. . . . $1000.00 an acre. Q. We object to that and move that it be excluded.

"BY THE COURT: Any statement the witness made not responsive to the question the jury will not consider it.

"A. I'm sorry. I know where they paid $1000.00 an a . . .

"BY MR. KEATON: We object, if the court please, and move to exclude his statement.

"BY THE COURT: The jury will not consider anything he said not responsive to a question. The jury is instructed to disregard anything he said about what was paid to somebody else. It is strictly the value of this land.

"A. I'm sorry, Judge. How will I base values if I can't by comparative values?"

This was improper evidence. Dantzler v. Miss. State Highway Commission, 190 Miss. 137, 199 So. 367; State Highway Commission v. Buchanan, 175 Miss. 157, 165 So. 795, 166 So. 537; 18 Am. Jur., Eminent Domain, Sec. 352, p. 996. Besides it was very damaging. The Court is of the opinion that the mild admonition of the trial judge to the jury did not erase the effect of that damaging evidence.

■■ ■ In addition to what has been said concerning the errors pointed out above, the Court is satisfied that, when the value of the land actually taken is combined with the cost of providing access to the land south of Alligator Creek, the total will be far and away from aggregating $16,000, the amount of the Eminent Domain award, and will not even approach the sum of $25,000, the amount of the circuit court award. Such amounts, for the damage done in this case, are monstrous and shocking to the conscience.

For the reasons stated, this cause must be reversed and remanded for a new trial.

Reversed and remanded.

*Gillespie, McElroy, Rodgers* and *Jones, JJ.,* concur.