FOSTER, et al. *v.* MISSISSIPPI STATE HIGHWAY COMMISSION

No. 42244 April 23, 1962 140 So. 2d 267

*Ben Owen,* Columbus, for appellants.

*Burgin* & *Gholson,* Columbus, for appellee.

Lee, P. J.

The Mississippi State Highway Commission, by an eminent domain proceeding, sought to condemn 12.05 acres of land, as described in the petition, for the purpose of obtaining road building material, namely, fill dirt, for use on state highways. The right to the use of the property would not run beyond July 1, 1963.

Thomas Redmond Foster and others owned the tract of land. It was about five miles northwest of the City of Columbus in Lowndes County and consisted of 828 acres. Approximately 200 acres was open and 560 acres was swamp woodland, all of which was subject to overflow. The remaining 68 acres was in the southeast part of the tract, on which was situated a large hill, and was the location of the condemned property. A graveled road separated this acreage from the balance of the land which lay to the west.

The jury in the eminent domain court awarded damages in the sum of $6,125.38. The landowners appealed and the jury in the circuit court fixed the damages at $6,500.00. From the judgment entered thereon, the landowners appealed.

The evidence for the Commission was to the effect that this material was unclassified dirt. It contained no trace of gravel, sand, bauxite, or other commercial materials. The value of the particular dirt was due to its proximity to the right of way, being only 680 feet. Four witnesses for the Commission agreed that the highest and best use for the 68 acres was for restricted residential purposes if and when the City of Columbus, which was growing in that direction, reached that far. One of the witnesses said that there had never been any established prices on fill dirt in that area. Another said that, since the completion of the road, there was a restricted market for it. There was evidence that the land was not damaged by the removal of fill dirt be-

cause this operation had the effect of leveling and smoothing the land, thus preparing it for homesites. For that reason the value for residential purposes was actually enhanced. Witnesses for the Commission, after placing a Before and After Value, estimated the damages from $4,875 to $5,550.

Two witnesses for the appellants were of the opinion that the highest and best use for the land was residential. One thought that the best use to the owners would be for fill dirt for their own land. Another witness and the appellant, Thomas Redmond Foster, were of the opinion that the highest and best use for this land was for fill dirt. The estimates of the damages by the witnesses for the appellant ranged from $22,000 to $37,000.

 █ Several contentions of the appellants merit responses. For instance, they say that the court erred in permitting the Commission to offer evidence to the effect that fill dirt would not be taken below the surface of the county road.

It is true that the prayer for condemnation did not specify the depth to which the material might be taken. But the evidence showed that the construction department had specified that the cut in this property would not be below the county road; that the Commission did not plan to do so; and that, at the time of the trial on August 9, 1961, the bottom of the cut was about 20 feet above this road. The project engineer and the staff appraiser of the Commission testified to the plans and purposes of the Commission. In the absence of a specification in the petition for condemnation to the contrary, it must be held that the construction, as stated by these responsible agents, is binding on the Commission.

 █ The appellants also contend that the Before and After value is not the proper formula to be utilized in this kind of case, and that they were not given full

sway in their efforts to introduce evidence in regard to the market value of fill dirt in that area.

Cases, too numerous to mention, have followed the formula, adopted for determining the damage in an eminent domain case as set out in Mississippi State Highway Commission v. Hillman, 189 Miss. 850, 198 So. 565, namely, the difference between the value of the property before and after the taking. However it was there recognized that it was not necessary in that case to state all of the law on the measure of damages. It was there pointed out that the expense of constructing necessary fences and a fish pond could be considered by the jury in determining the market value of the land, but not as constituting separate items of damage. Likewise it was said that evidence of the value of the trees was admissible for consideration by the jury in arriving at the value of the land, but not as constituting a separate item of damage. The landowners could not show that the construction of an underpass would have reduced their damage because the Commission was under no duty to do so. But, if the Commission had desired, it might have constructed the underpass and lessened the damage.

In Mississippi State Highway Commission v. Treas, 197 Miss. 670, 20 So. 2d 475, the evidence was held to be admissible where the landowners were careful to connect the specific items of the cost of rebuilding and removing barns, a silo, digging new pools, and constructing three miles of fence along the new highway, resulting from the construction of the road as located, and where they had their witnesses consider such costs only as bearing upon the market value. See also Mississippi State Highway Commission v. Peterson, 238 Miss. 63, 117 So. 2d 452, where the loss of two shade trees was held to constitute damage to the property. See also Mississippi State Highway Commission v. Strong, 240 Miss. 756, 129 So. 2d 349.

In Mississippi State Highway Commission v. Ladner, (Miss. 1962), 137 So. 2d 781, it was said: ''Every factor having a legitimate bearing on the before or after value of the land may be put in evidence. This includes specific items affecting the depreciated value, but they may not be shown as separate items of damage. Such specific items may be shown by the testimony if the witness testifies in accordance with the before and after rule and connects such specific items with the before and after fair market values, and considers them only as bearing upon such market values.'' See also Mississippi State Highway Commission v. Ladner, (Miss. 1962), 137 So. 2d 784.

In State of Washington v. Mottman Mercantile Co., 321 P. 2d 912 (1958), where the evidence was in dispute as to whether the highest and best use of the condemned property was for residential or gravel purposes, the refusal to permit the introduction by the property owner of evidence as to the amount and value of the gravel in place was held to be error. The opinion said: ''It was legitimate evidence, not as affording a measure of recovery, but as explaining and supporting the estimates made of the market value of the property. * * * The error in refusing to admit it, in this case, was, of necessity, prejudicial because it prevented the property owner from presenting to the jury this evidence as to the value of the gravel, in place on the land, in support of his theory that the highest and best use of pit site J-49 was as a gravel pit.'' It was also said that: ''* * * it is improper to arrive at a conclusion concerning the value of property which has a mineral content by multiplying the assumed number of cubic yards of material available times a given price per unit.'' Again it was said: ''* * * no one would argue that the value of the land is the number of cubic yards available, multiplied by a unit price.'' Finally it was said that: ''The trial court could properly instruct the jury, as it did,

that the value of the property was not to be 'based upon any method of multiplying a certain total cubic yards of gravel times a certain price per yard.' " The above principle was reaffirmed in State of Washington v. Larson, 338 P. 2d 135.

Fill dirt is utilized as a material for road building purposes. There seems to be no good reason why its market value, if it has one, should not be offered in evidence.

Now, at the beginning of the trial, the court was of the opinion that the Before and After value of the property was the true formula to be applied. For that reason the inquiry was somewhat restricted. But, as the trial progressed, the judge vacillated somewhat on the question of the admissibility of such evidence, first holding that evidence of market value was not admissible, but later permitting the landowners' witnesses to testify thereon. Actually A. L. Cox, an engineer, testified that there were 570,000 cubic yards of dirt in the hill above the level of the road. William I. Rosamond was permitted to testify that he had sold fill dirt in that area during the past few months for four cents per cubic yard in place. John A. Rice testified that, based on recent activity, the market value of fill dirt was five cents per cubic yard and up. Powell Fleming's evidence was to the effect that the market price in that area was from five to ten cents per cubic yard. Willis Puckett's evidence was to the same effect as Fleming's. Banks McDaniel, who said that he had checked on sales of fill dirt, testified that the price was eight to ten cents per cubic yard. Thomas Redmond Foster testified that the price of fill dirt in that area ran from two to ten cents per cubic yard.

In other words, six witnesses testified for the landowners as to the market price of fill dirt in that area. Thus the jury had before it evidence as to the quantity of fill dirt available and the testimony of six

witnesses as to the market value of such material in that area. Even though the court had imposed restrictions in this regard on some of the witnesses for the Commission, and, at first even on the witnesses for the landowners, that rule was relaxed and the appellants got the benefit of all their evidence on that question. Under the circumstances, there was no prejudicial error in this respect.

The appellants also say that the court erred in refusing to allow them to introduce the recent sales of two fill dirt pits by the First Columbus National Bank to the Commission.

The price paid by the condemner for similar land, even though condemnation proceedings have not been begun, are not admissible. "Such payments are in the nature of compromise, to avoid the expense and uncertainty of litigation, and are not fair indications of market value". 18 Am. Jur., Eminent Domain, Sec. 353, p. 996. Cf. State Highway Commission v. Buchanan, 175 Miss. 157, 165 So. 795; Dantzler v. Mississippi State Highway Commission, 190 Miss. 137, 199 So. 367; Mississippi State Highway Commission v. Ladner, (Miss. 1962), 137 So. 2d 784.

Again, the appellants say that the court erred in refusing their proffered evidence as to three recent sales by Weyerhaeuser Timber Company to a highway contractor.

Of course, recent sales of similar property in the same area by one other than the condemner are admissible. 18 Am. Jur., Eminent Domain, Sec. 351, p. 994. But the record discloses the following circumstances: Van Ingram, an accountant and administrative assistant to the company, familiar with the company's affairs, was called as a witness by the landowners. He stated that the new highway ran across the company's land, and was asked if, within the past 18 months, the company had sold any fill dirt to a contractor. At this

juncture, the Commission's counsel objected that this was irrelevant, and the objection was sustained. The appellants asked no further questions. The inquiry was not developed for the record in the absence of the jury, nor was any specific statement made as to what the answer or testimony would be, if the examination was continued. Later, when there was no witness on the stand, appellants signified to the court their desire to offer sales of fill dirt by an adjoining landowner together with the price thereof. Counsel for the Commission expressed no wish to say anything for the record, but stated that he would make an objection, if he saw fit to do so. While the court indicated that he thought the evidence was inadmissible, appellants did not tender the witness and adduce the testimony and did not state into the record what the witness would testify to on the subject matter.

In G. M. & N. R. Co. v. Willis, 171 Miss. 732, 157 So. 899, this Court said: ''The rule has been long established in this jurisdiction that a judgment will not be reversed for error unless it be shown by the record that the error was actually prejudicial and harmful to the rights of the complaining party. Mississippi Utilities Co. v. Smith, 166 Miss. 105, 117, 145 So. 896; Goins v. State, 155 Miss. 662, 667, 124 So. 785. Consonant with that rule, when a party would seek a reversal because of excluded testimony, he must either place the witness on the stand, ask the questions, and have the answers made of record, or else the witness must be presented, and there must be a specific statement of what the answers or testimony of the witness would be, if allowed, so that the court may see from the record itself whether the offered evidence would be material and of benefit to the merits of the case, and whether its exclusion was actually harmful and prejudicial to the offerer. Bradley v. Howell, 161 Miss. 346, 354, 133

So. 660, 134 So. 843.'' Cf. Martin v. Gill, 182 Miss. 810, 181 So. 849; Fortenberry v. Herrington, 188 Miss. 735, 196 So. 232; Newell v. State, 209 Miss. 653, 48 So. 2d 332. See also Lizana v. Edward Motor Sales Co., 163 Miss. 266, 141 So. 295.

██ ██ Under the facts in this record, this point, if in fact it was one, was not preserved.

The four instructions on the merits, given for the Commission, properly announced the Before and After value formula, as announced in Mississippi State Highway Commission v. Hillman, supra, and consistently followed by this Court ever since. There was no valid reason to depart from that rule in this case.

The three instructions on the merits, given for the landowners, also recognized and announced that principle.

Appellants' instructions, numbered 5 and 6, refused by the court, told the jury to find their verdict on the basis of the amount, and the fair market value of fill dirt. Obviously these requests were properly refused.

Appellants' instructions 7 and 8 gave the jury the right to assume in effect that the Commission might dig below the surface of the county road and leave a large and irregular hole in the ground. In view of what has been said in connection with the right of the Commission, that is, not to go below the surface of the county road, these instructions were erroneous.

The Court deems further response to be unnecessary.

Suffice it to say, the jury heard the conflicting evidence as to the highest and best uses of the property and the respective values of each. In addition, they were aided in appraising the weight and worth of such evidence by a personal view of the premises. Under all of the circumstances, the Court is unable to find any valid reason to warrant a conclusion that the application

of the State's long-established formula for the ascertainment of damages resulted in injustice in this case.

Affirmed.

*Arrington, Ethridge, McElroy* and *Rodgers, JJ.*, concur.