240 So.2d 607 (1970)
Terry James Moore (COLEMAN) Jr., Elvester Moore (Coleman), and James Wilson Moore (Coleman)
v.
FORD MOTOR COMPANY.
No. 45940.
Supreme Court of Mississippi.
November 2, 1970.
Bowling, Coleman & Cothren, Jackson, Charles C. Finch, D. Briggs Smith, Batesville, for appellants.
*608 Watkins & Eager, Hassell H. Whitworth, Elizabeth Hulen, Jackson, for appellee.
GILLESPIE, Presiding Justice.
This is a products liability case. The heirs of Terry James Coleman sued Ford Motor Company alleging that the accident resulting in the death of Mr. Coleman, the driver of a Ford truck, was caused by a defective spindle arm in the steering mechanism of the truck. The jury returned a verdict in favor of defendant. Plaintiffs appealed. The principal questions involve the giving and refusing of certain jury instructions. Two questions of lesser importance involve the exclusion of certain evidence offered by plaintiffs. Finding no reversible error, we affirm.
Plaintiffs' decedent, Terry James Coleman, was employed as a truck driver for Ward Hudson. The truck which Coleman was driving at the time of the fatal accident was a 1967 Ford equipped with a 7,000 pound front axle. Hudson had purchased the truck new on September 15, 1966. On June 23, 1967, the date of the fatal accident, the truck had been driven 57,000 miles. The truck was designed to transport heavy loads of gravel for several hundred thousands of miles. On the day of the accident Coleman left Hudson's yard at about 4:45 A.M. driving the above described truck which was pulling a trailer loaded with 30,000 pounds of gravel. About daylight another driver, Easter Shaw, arrived at the accident scene which was on a rough gravel road. Coleman was alive but died a short time later from brain damage. The truck Coleman was driving had passed through a curve to the left and gone about 200 to 300 feet, angling to the right into a ditch on the right side of the road. The ditch was about four feet deep, and beyond it was an embankment. There were no eye witnesses to the accident. There was no evidence of skidding or sliding. The right wheel and front end of the truck struck the ditch and bank, and the front wheels and axle were knocked back about four feet under the cab. The cab shifted on the frame, and the front axle assembly was sheared off the chassis. The tie rod and the left spindle arm of the steering mechanism was bent. The right spindle arm was broken into two pieces.
The principal factual issues for the jury were: (1) was the right spindle arm reasonably safe for its intended use when the truck left the Ford Motor Company, and (2) if not, was the defect which rendered it not reasonably safe the proximate cause of the accident which resulted in Coleman's death.
On June 12, 1967, Ford mailed a special service letter to all Ford dealers notifying them of a service campaign for certain 1967 model trucks equipped with 6,000 pound and 7,000 pound front axles. This letter stated that the campaign involved the replacement of spindle arms and tie rod tubes on the trucks in question. It stated that under poor road conditions with severe chuckholes, especially at high mileage, circumstances may arise where the steering components may be subject to damage. It further stated that under certain conditions the spindle arm could rotate and once rotation occurred, reverse bending of the arm could begin and continue until failure. The initial deformation and spindle arm rotation would change front end alignment, reducing or increasing toein, which would be the first indication of failure. The letter further stated that driver reaction would be an increased effort in steering. It advised an inspection of all the subject trucks and a replacement with newly designed spindle and spindle arms, steering rod and connecting tie rods. The service letter stated that the truck was to be continued in use if there was no visible damage until a sufficient supply of replacement parts were available. On June 14, 1967, a letter was sent by Ford to all owners of such trucks advising the owners that under poor road conditions with chuckholes *609 and especially at high mileage, the truck could be subject to possible damage of the steering components. This letter requested the owner to bring the truck to the dealer for inspection. The owner was advised that an engineering improvement had been made which Ford would make available to the owner at no cost as soon as it could secure the new parts in sufficient quantity. This notice was received by Ward Hudson a few days before the accident, but Hudson did not tell Coleman about the letter. At that time the dealer who sold the truck to Hudson had discontinued business, and another dealer was taking over the dealership. Another dealer was contacted, but the time is not definite.
Ford's pre-1967 trucks were equipped with different spindle arms from the 1967 models. After Ford made extensive engineering tests, it was discovered that a combination of heavy loading and off highway use on roads with chuckholes could lead to a deformation of the steering arm with a resulting loss of steering control on one wheel. Up to the time of the campaign to replace the spindle arms, there appear to have been no failures in the United States, although problems had been experienced on overseas units, which had been subject to abusive service on poor roads.
The broken pieces of the right spindle arm were introduced into evidence. This spindle arm had a fatigue crack. According to the testimony on behalf of Ford, there was a small area of fatigue on one side of the spindle arm which constituted from three to ten percent of the area of the part, but 90 to 95 percent of the right spindle arm failed suddenly as a result of one sudden impact load. There was a sharp dispute in the testimony as to approximately one-half of the broken surface area of the spindle arm which was worn smooth. According to a metallurgist offered on behalf of plaintiffs this area was a fatigue crack which had been worn smooth by the two sides rubbing against each other. On the other hand, the metallurgist who testified for Ford stated that this smooth area was not a fatigue break, but the result of a shearing action when the arm broke. The testimony on behalf of Ford was that the first indication of failure of the spindle arm would be a marked increase in difficulty in steering and the wheels would be out of alignment, resulting in abnormal wear on the tires. There was no evidence of abnormal wear on the tires; the tracks at the accident scene did not indicate steering difficulty; nor had Coleman complained of difficulty in steering.
Plaintiffs complain of the action of the trial court in granting defendant's instructions numbered 8, 9, and 10. The principal complaint involves the latter instruction which is as follows:
The court instructs the jury for the defendant that though you may believe from a preponderance of the evidence in this case that on the date of the accident complained of by plaintiffs the right spindle arm was defective and such defect, if any, was the sole or contributing proximate cause of the accident, you still must find for the defendant if you further believe from the evidence in this case that on the date the truck in question left the hands of Ford Motor Company it was in a reasonably safe condition to be used by the user or driver for the purposes intended.
Plaintiffs submit that this instruction might be proper under some products liability cases, but that under the particular facts it was tantamount to a peremptory instruction. Plaintiffs further argue that there was no true issue as to whether the truck was in a reasonably safe condition on the date it left Ford. In effect, the argument is that the only true issue was whether the defect was the proximate cause of the accident. It is also contended that the giving of this instruction and the refusal *610 of certain instructions requested by plaintiffs deprived plaintiffs of the opportunity to present their theory of liability.
In our opinion the plaintiffs had the burden of proving the following in order to recover, (1) the truck was not reasonably safe for its intended use when it left the control of Ford, and (2) the accident and resulting death of Coleman was proximately caused by the defect that rendered it not reasonably safe for its intended use. State Stove Manufacturing Co. v. Hodges, 189 So.2d 113 (Miss. 1966). State Stove and the later case of Ford Motor Co. v. Cockrell, 211 So.2d 833 (Miss. 1968), are clear to the point that the defendant's liability does not depend on whether or not the manufacturer was at fault in creating and placing on the market a product which is not reasonably safe. Plaintiffs' argument that they were cut off from presenting their theory of liability based on faulty design is without merit. The instruction given Ford was not in conflict with that theory. We do not agree that the only true issue for the jury was the question of causation. The existence of the admittedly small fatigue crack coupled with the facts giving rise to the recall campaign were significant facts for the jury to consider in determining whether the truck was reasonably safe for its intended use when it left Ford's control, but these facts were not conclusive on the "reasonably safe" issue. The authorities, including State Stove, supra, recognize that strict products liability does not require a perfectly safe product. Moreover, whether a product is reasonably safe or not is a flexible standard responsive to the facts of each case. The fact that there had been no previous accidents throughout the country resulting from the use of this particular design of spindle arm and that failures resulted only under the conditions stated made it a jury question as to whether the truck was reasonably safe for its intended use when it left Ford's control. In our opinion under the proof in this case it was for the jury to say whether or not the spindle arm was reasonably safe when it left Ford's control. What is reasonable is usually a question for the jury. The issue of whether the truck was reasonably safe for its intended use was submitted to the jury in the instructions granted at the request of plaintiffs along with the causation issue.
We are of the opinion that the granting of Ford's requested instructions numbered 8, 9 and 10 were not reversible error.
Plaintiffs contend that the giving of Ford's requested instructions numbered 8, 9 and 10 together with the refusal of several instructions requested by plaintiffs constituted error. The jury was adequately instructed on the issues. We are of the opinion that the instructions requested by plaintiffs and refused by the trial court were properly refused for one or more of several reasons.
Plaintiffs complain of the action of the trial court in refusing to admit a statement made by the deceased Coleman to Easter Shaw who was the first person to arrive on the scene after the accident. According to Shaw's testimony he arrived at the scene of the accident about daylight, but did not know what time it was. He testified that Coleman was lying in the truck and he pulled him up and that Coleman told him, in answer to Shaw's inquiry as to what happened, "I don't know. I couldn't cut back." Plaintiffs contend that this statement was part of the res gestae and should have been admitted. This Court stated in Simon v. Dixie Greyhound Lines, 179 Miss. 568, 176 So. 160 (1937), the following:
The true inquiry, according to all the authorities, is whether the declaration is a verbal act, illustrating, explaining, or interpreting other parts of the transaction of which it is itself a part, or is merely a history, or a part of a history, *611 of a completed past affair. In the one case it is competent; in the other it is not. (179 Miss. at 578, 176 So. at 162).
In our opinion the trial judge correctly refused to admit this statement. It is not shown that it was part of the accident or so closely connected therewith to constitute a part of the occurrence. The words themselves indicate that Coleman was relating the history of something that had already occurred. At most, it was a question for the sound discretion of the trial judge, and we cannot say he abused this discretion.
Plaintiffs assign as error the action of the trial court in excluding the part of the testimony of Dee Smith, an auto repair mechanic of many years experience, who was asked a hypothetical question as to what happened to that particular steering mechanism at that time. In our opinion the trial court was justified in refusing to admit the answer to the proposed question for the reason that it proposed to allow the witness to answer a question that was a fundamental issue for the jury to decide. Moreover, this point was not preserved as required in Foster v. Mississippi State Highway Commission, 244 Miss. 57, 140 So.2d 267 (1962).
One other question involving a jury instruction given at the request of the defendant is without merit and does not require discussion.
After a careful study of this case, it appears that it was a well tried and hard fought case; that the facts were fully developed; and that the jury was fairly instructed. We find no reversible error.
Affirmed.
RODGERS, JONES, BRADY and SMITH, JJ., concur.