ANDERSON, Justice,
for the Court:
This is an appeal from the Circuit Court of Rankin County, Special Circuit Judge Rubel Griffin presiding.
In 1975, the City of Jackson (“Jackson”) entered into a contract with the Richland Water & Sewer District (“Richland”), whereby Jackson undertook to treat Rich-land’s sewage at its new Savanna Road Sewage Treatment plant. This transaction took place after the Environmental Protection Agency had repeatedly expressed concern about the quality of sewage treatment in the Jackson Metropolitan area.
The contract itself expresses the desire of both parties to treat their sewage according to EPA standards. Under the terms of the contract, Jackson was to finance, construct, own, operate and maintain the “intercommunity interceptor” and “related facilities”; Richland, for its part, was to do the same for “collectors” and “sub-interceptors” feeding into the system. Richland’s payment was to be computed by Jackson on a semi-annual basis. It was to be based on the amount of water discharged into the system from Richland. The cost would be adjusted to include the actual cost for operation and maintenance, capital recovery for a pro-rata share of any bonds issued by Jackson to finance the project and capital recovery for a proportionate share of an interest-free loan given to Jackson for this purpose by the State.
In 1977, Jackson began negotiating with Richland, Pearl, Brandon, Flowood, Whitfield State Hospital Complex, the Reservoir area, Crossgates, and the Jackson Municipal Airport, all located in western Rankin County, with a view to establishing a unified sewage treatment system in the Jackson metropolitan area. The other communities involved accepted Jackson’s offer; Richland, preferring the terms of its 1975 contract, refused. Jackson went ahead and built the system in the rest of Rankin County. On March 5, 1981, Jackson began actual treatment of Richland’s sewage. On February 8, 1982, Jackson submitted a bill *144 to Richland covering the first six months of these operations. The bill was in the amount of $75,096.13. Richland charged that the bill was excessive and that Jackson was, in effect, billing Richland as though it had assented to the 1977 contract instead of continuing under the 1975 contract. Richland made a partial payment of $18,416.31, which it described as a token of good faith without prejudice to its right to contest Jackson’s method of calculation. Richland later offered an additional partial payment of $10,000. This was made after Jackson submitted its second bill for the second six months of the arrangement amounting to $83,389. Jackson continued to dun Richland for its alleged delinquency. Richland, on the other hand, alleged that the bills from Jackson were improperly prepared, that no accurate measurements of Richland’s contribution to the sewage system had been made, and that the operation and maintenance costs improperly included the cost of a force main pumping system to transmit the sewage across the Pearl River to the Savanna Road plant. Richland contended that, under the 1975 contract, it was not obliged to pay for any part of this pumping station.
Negotiations between the parties bore no fruit, and Jackson filed suit in the Circuit Court of Rankin County for collection on the contract. Trial was held in that court, and the jury returned a verdict for the defendant. Jackson perfected an appeal, which is now before this Court.
Jackson now argues, in substance, that the 1975 contract must be understood in terms of the concept of a “regional sewer system,” and that if it were so understood, Richland would be held to have assented to bearing a proportionate share of the cost of all facilities. Jackson claims that the trial judge erred by not allowing certain witnesses to testify about the “regional sewer system” concept in the jury’s hearing.
We are unpersuaded by this argument. Even if Richland understood that it was to enter such a regional sewage system, such a realization is by no means inconsistent with a belief that Richland was to bear only the costs specifically allotted to it by the 1975 contract. The record shows that the jury not only heard a good deal of testimony about the understandings of the parties, but were instructed by the court that they could consider the surrounding circumstances of the contract, (Instruction P-4). Further, Jackson’s theory of “Regional Sewer Concept” was argued by counsel in both the opening and closing arguments. That some such evidence was excluded is not fatal to the verdict absent some showing in the record that the exclusion prejudiced Jackson. Transcontinental Pipeline Corp. v. State Oil & Gas Bd., 457 So.2d 1298, 1332 (Miss.1984); Barnett v. Getty Oil Co., 266 So.2d 581, 587 (Miss.1972); Foster v. State Highway Comm’n, 244 Miss. 57, 67, 140 So.2d 267, 270-71 (1962). Having examined the proffered testimony, we cannot say that Jackson fared any worse for the jury’s not having heard it.
The other assignments of error are similarly without merit, and do not warrant extended discussion.
Jackson obviously drove a better bargain in its 1977 contracts than in the 1975 contract sub judice. It is, however, hornbook law that the courts will not release parties from contract merely because they could have made better ones. Accordingly, we affirm the lower court’s decision, without prejudice to Jackson’s right to seek any other available relief.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON, and SULLIVAN, JJ„ concur.