# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 98-CA-00454-SCT

*RENA A. FORD INTER VIVOS TRUST,*

*MARY ELIZABETH FORD, JOHN M.*

*FORD, JAMES IRA FORD, TRUSTEES;*

*AND ANY OTHER PERSONS OR*

*PARTIES IN INTEREST HAVING OR CLAIMING ANY RIGHTS, TITLE OR INTEREST, LEGAL OR EQUITABLE*

*IN AND TO THE REAL PROPERTY DESCRIBED HEREIN*
*v.*
*DESTIN PIPELINE COMPANY, L. L. C.*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/02/1998 |
| TRIAL JUDGE: | HON. T. LARRY WILSON |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY SPECIAL COURT OF EMINENT DOMAIN |
| ATTORNEYS FOR APPELLANTS: | ROBERT H. OSWALD |
| | HENRY P. PATE |
| | WILLIAM T. REED |
| ATTORNEYS FOR APPELLEE: | JAMES L. HALFORD |
| | RICHARD WILSON MONTJOY, II |
| | W. LEE WATT |
| NATURE OF THE CASE: | CIVIL - EMINENT DOMAIN |
| DISPOSITION: | AFFIRMED - 05/11/2000 |
| MOTION FOR REHEARING FILED: | 5/26/2000; denied 8/10/2000 |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1. Dissatisfied with its one-half share of a judgment based on a jury verdict for $17,500 for a right-of-way and an easement, the landowner in this eminent domain case appeals, seeking a reversal and remand for a new trial. Finding no reversible error, we affirm.

## FACTS AND PROCEEDINGS BELOW

¶2. Appellee Destin Pipeline Company, L.L.C., was constructing a 36" high pressure nature gas pipeline northward from the Gulf of Mexico, through Pascagoula, Mississippi, to the Enterprise, Mississippi, area. As part of the project, Destin entered into negotiations with scores of landowners in Jackson, Wayne, Greene, George and Clarke Counties to purchase rights-of-way and easements for the construction of the pipeline. One such landowner was Appellant Rena A. Ford Inter Vivos Trust, which co-owned a 106-acre, industrial-zoned tract located between Bayou Cumbest Road and United States Highway 90 in Jackson County.[1] Destin sought to purchase a 50 foot wide perpetual right-of-way and easement[2] (comprising 2.160 acres) across the land and offered $7,250 in compensation for the Trust's one-half interest therein.

¶3. After the Trust declined the offer, Destin filed a Petition to Exercise Right of Eminent Domain and Lis Pendens in the Jackson County Special Court of Eminent Domain. Destin's Statement of Values placed a value of $3,335 on the right-of-way. In response, the Trust valued the right-of-way as $1,033,400. After a three-day trial during which the jury viewed the property, the jury returned a verdict for $17,500. As an equal co-owner of the tract, the Trust would have been entitled to one half of the verdict, or $8,750. Judgment was entered accordingly. Aggrieved by the judgment, the Trust appeals, raising the following assignments of error:

**I. DESTIN FAILED TO DESCRIBE PROPERLY THE CONDEMNED LAND.**

**II. THE TRUST DID NOT RECEIVE A FAIR TRIAL FOR THE FOLLOWING REASONS: DESTIN FAILED TO PROVIDE ITS AUTHORITY TO CONDEMN; DESTIN USED INAPPROPRIATE COMPARABLE SALES EVIDENCE WHILE THE TRUST WAS WRONGFULLY DENIED THE USE OF A SALE OF THE SAME LAND; THE TAINTED JURY'S VIEW OF THE TRUST'S LAND; THE EXCLUSION OF EVIDENCE OF THE EFFECT OF THE PIPELINE UPON THE REMAINDER OF THE TRUST'S LAND; AND PRE-FILING NEGOTIATIONS.**

## DISCUSSION

### I. THE SUFFICIENCY OF THE PROPERTY DESCRIPTION.

¶4. Prior to trial the trial court denied the Trust's motion to dismiss on the basis that the property description provided by Destin was insufficient. An eminent domain judge is the finder of facts in determining whether to grant a motion to dismiss a petition for eminent domain. *American Tel. & Tel. Co. v. Purcell Co.,* 606 So. 2d 93, 95-96 (Miss. 1990). The standard of review is whether the trial judge had a sufficient basis for his or her decision. *Mayor v. Thomas,* 645 So. 2d 940, 941-42 (Miss. 1994).

¶5. On appeal, the Trust points to Miss. Code Ann. § 11-27-5 (Supp. 1999), which requires that an eminent domain petition "shall describe in detail the property sought to be condemned," and to Miss. Code Ann. § 19-27-15 (1995), which requires surveyors "to perpetuate the original corners [and] . . . the principal corners." The Trust argues that Destin neither provided a metes and bounds description nor

described the property in relation to a section corner.

¶6. This Court has held that, where plans and specifications were not attached to the original petition for eminent domain, the petition was sufficient: "That is certain which can be made certain by means of the description or references contained in the petition. The petition may refer to a map or plat attached or on the public records, . . . and the description will be sufficient if it can be made out by such references." *Rand v. Mississippi State Highway Comm'n*, 191 Miss. 230, 199 So. 374, 375 (1941) (quoting 2 Lewis Eminent Domain, pp. 979, 980; 20 C.J. pp. 957, 958). In a case where the tract of land was referred to in different places in the pleadings as consisting of 12.12 acres or 5.928 acres, the Court held that the landowner "was never confused as to precisely what land the petitioner sought," and declined to reverse on the grounds that the description was inadequate. *Governor's Office of General Servs. v. Carter*, 573 So. 2d 736, 739 (Miss. 1990).

¶7. A review of applicable Mississippi law does not unearth, nor does the Trust cite, any precedent which states that, for eminent domain property descriptions to be sufficient, they must be expressed in terms of metes and bounds. The record shows that Destin attached to its petition Exhibit "A," which describes the land owned by the Trust; and Exhibit "B," which consists of two documents: a scaled drawing which depicts the Trust's land, the proposed right-of-way, and existing Mississippi Power Company utility poles; and a written centerline description of the right-of-way. Exhibit "A" references the Northeast corner of the Northeast quarter of Section 27 of Township 7 South, Range 5 West. The drawing references the Southwest corner of the Northeast quarter of Section 27, Township 7 South, Range 5 West. The drawing also shows that the Destin right-of-way would generally parallel the Mississippi Power Company utility poles. The written description of the right-of-way references the Southwest corner of the Northeast quarter of Section 27, Township 7 South, Range 5 West. Moreover, Destin's surveyor testified at length about the location and description of the land in question.

¶8. The Court finds that the Trust was sufficiently notified of what tract of land was subject to condemnation, especially since the proposed right-of-way parallels the utility poles which existed on the land, and that the trial court had a sufficient basis on which to deny the Trust's motion to dismiss on this issue. Indeed, at oral argument before this Court, the Trust's attorney acknowledged that the right-of-way "roughly paralleled" the utility poles. There is no credible reason why the Trust would be confused as to what land was being sought by Destin. This assignment of error is without merit.

## II. WHETHER OR NOT THE TRUST RECEIVED A FAIR TRIAL.

*Provision of Corporate Authority for Condemnation*

¶9. The Trust contends that, under *American Tel. & Tel. Co. v. Purcell Co.,* 606 So. 2d 93 (Miss. 1990), and M.R.C.P. 10, a condemnor must attach to its petition a corporate resolution authorizing the taking, and that Destin's failure to do so merited dismissal of this case. The Trust is correct in stating that the *Purcell* case does require a corporation to prove that it has been authorized to file an eminent domain suit, but *Purcell* does not hold that such proof should be attached to the petition. Indeed, the opinion refers to the fact that the **record** contained no proof of the corporate authority to act. *Id.* at 97.

¶10. The record in the case sub judice provides ample proof that Destin had corporate authority to seek condemnation of the Trust's land: Destin filed into evidence a copy of its management committee resolution authorizing the lawsuit; the resolution was executed prior to the filing of the lawsuit; and Destin's Vice

President testified that the management committee authorized the lawsuit. This claim is without merit.

*Evidence of Comparable Sales*

¶11. The Trust complains that the trial court abused its discretion by not allowing it to introduce evidence of its sale of a right-of-way to Koch-Gateway Pipeline. The purpose of the admission of evidence of comparable sales is to determine the fair market value of a tract of land. We have defined fair market value in various ways, but our definition generally includes the following:

> Fair market value is a value in exchange. It is the sales price that would be negotiated between one who wants to purchase and one who wants to sell . . . . The seller must be one who desires but is not obligated to sell, and the buyer must be under no necessity of having the property.

*Crocker v. Mississippi State Highway Comm'n*, 534 So. 2d 549, 552 (Miss. 1988). *See also Transwestern Pipeline Co. v. O'Brien*, 418 F.2d 15, 17 (5th Cir. 1969); *Mississippi State Highway Comm'n v. Hillman*, 189 Miss. 850, 869, 198 So. 565, 571 (1940) (market value of property sought to be condemned is "the price which it will bring when it is offered for sale by one who desires, but is not obliged to sell it, and is bought by one who is under no necessity of having it.").

¶12. The trial court excluded evidence of the Koch-Trust transaction because Koch was in the process of constructing the pipeline, having already purchased most of the rights-of-way it needed, including the rights-of-way on each side of the Trust property. If Koch did not purchase the Trust property, it would have had to reroute the pipeline. Koch decided it would be more cost-effective to pay an inflated price for the Trust property than to redraw its plans and purchase more property.

¶13. The Koch-Trust purchase was properly excluded as a comparable sale because of the business necessity created by the circumstances. *See* 5 Nichols on Eminent Domain § 21.05, at 21-63 (3d ed. 1999) ("[I]t has been held that compulsion may also be created by business circumstances."). In *Colonial Pipeline Co. v. Gimbel*, 456 A.2d 946, 953 (Md. Ct. Spec. App. 1983), the court held that a "holdout" seller causing a "distorted price being paid" would render evidence of a sale of property inadmissible. And in *E & F Realty Co. v. Commissioner,* 377 A.2d 302, 305 (Conn. 1977), the Connecticut Supreme Court stated:

> It was these attendant circumstances of "financial pressure . . . due to shortage of capital" which led the court to the conclusion that the sale was a distress sale and, therefore, not to be considered as a "comparable sale" . . . . While the sale was clearly not a "forced sale" in the sense that it was made under compulsion or legal duress, in a colloquial sense of the term it was made in the financially "distressed" circumstances of the seller. We find no error in the conclusion of the court that under the circumstances it was not a controlling comparable sale between a willing seller and a willing buyer.

¶14. Moreover, our review of the trial court's decision on the admissibility of comparable property sales information is limited to abuse of discretion. *See Pearl River Valley Water Supply Dist. v. Wright*, 203 So. 2d 69, 72 (Miss. 1967) (citing *Maxwell v. Iowa State Highway Comm'n*, 223 Iowa 159, 271 N.W. 883 (1937) (rule well established that decision concerning whether another tract or sale is sufficiently similar to pending case's circumstances so as to allow admission of sales price rests largely within discretion of trial court). Applying this limited standard of review, we find no abuse of discretion.

¶15. The Trust also complains that the trial court erred by admitting evidence of a sale of property zoned

agricultural when the Trust property was zoned heavy industrial. Even though the two parcels of property did not share identical zoning, they were comparable in that both were composed mostly of wetlands as opposed to uplands. Also, the Court notes that the agricultural parcel was only one of four comparable sales admitted into evidence. Finally, the Trust has cited no authority in support of its claim that such evidence would not constitute a "comparable sale." Indeed, this Court has noted that an appropriate subject for cross-examination on comparable sales would be differences in zoning. *Mississippi Transp. Comm'n v. Bridgforth*, 709 So. 2d 430, 437 (Miss. 1998). For these reasons, we find no abuse of discretion.

*The Jury's Viewing of the Property*

¶16. The record does not show that the Trust ever objected to the sufficiency of the jury's viewing of the subject property. Nevertheless, the Court will address the merits of its claim.

¶17. The Trust argues that it did not receive a fair trial because the jury view conducted by the trial court was misrepresentative and tainted because the jury never actually stepped onto the land, but viewed it from certain boundaries, and because the route taken by the jury to reach the land was through "undesirable wet land," giving the jury the impression that the Trust's land was also undesirable. The record shows that the jury was transported by a "swamp buggy" to view the proposed right-of-way from where it entered the Trust's western property boundary. The land consisted of an open pine savannah,[3] and the jury could see across the property along the easement to the power line poles near the eastern boundary of the property. The jury was also taken to the northwest corner of the property where railroad tracks and Highway 90 were located.

¶18. Miss. Code Ann. § 11-27-19 (Supp. 1999) allows the jury to "go to the premises, under the charge of the court as to conduct, conversation and actions as may be proper in the premises." *See also Smith v. Mississippi State Highway Comm'n*, 423 So. 2d 808 (Miss. 1982). The Court has actually expressed a preference for having the jury view the premises. *Trustees of Wade Baptist Church v. Mississippi State Highway Comm'n*, 469 So. 2d 1241, 1247 (Miss. 1985); *Barrett v. State Highway Comm'n*, 385 So. 2d 627, 628 (Miss. 1980).

¶19. The view should be conducted as follows:

The view should be from all standpoints which will fairly inform the jury of the extent of the injury inflicted and the damages sustained, but only the land to be affected should be viewed. Allowing a jury to view the rear of property in question is not an abuse of discretion when the area is within the remainder and testimony had concerned the area.

29A C.J.S. *Eminent Domain* § 302, at 647 (1992) (footnotes omitted).

¶20. Once again, a review of applicable Mississippi law does not reveal, and the Trust does not cite, authority for its claim that a jury must enter the subject property in order for a jury viewing to be sufficient. John W. Burris, an expert witness, testified that the entire Trust tract was an open savannah and that one could see from one boundary to the other. This testimony is uncontroverted. The Trust exercised its right to cross-examine Burris and had the opportunity to present evidence to the contrary, but it did not.

¶21. As far as the wetness of the land is concerned, Burris testified that the tract consisted of 24.2 acres of uplands and 80 acres of wetlands. The Trust's expert testified that the tract contained 36 acres of uplands. The jury viewed the land itself and heard extensive testimony regarding the nature of the property from

other witnesses as well. Indeed, the Trust put on proof that the Trust would not have difficulty in obtaining a **wetlands** mitigation permit from the U. S. Army Corps of Engineers in order to develop the property.

¶22. The ultimate factfinder is the jury, and the Trust has presented no credible argument that the jury was misled in any way in viewing or assessing the nature of the land. This asserted error is without merit.

### *The Effect of the Pipeline on the Remainder of the Land*

¶23. The Trust claims that the trial court committed reversible error by excluding certain evidence of alleged pipeline dangers which purportedly limit the use of the Trust's land outside the right-of-way. Prior to trial, Destin filed a motion in limine asking the court to deny the Trust the opportunity to introduce evidence of pipeline explosions and accidents. The court granted the motion with one exception: "[i]f there's competent testimony from a witness with the requisite expertise as to comparable land purchases that would demonstrate that the land value would be diminished by the presence of the pipeline, then that may be admissible." The court also cautioned Destin that if it introduced evidence of a good safety record or of benefits to the remainder from the presence of the pipeline, the Trust would be allowed to introduce pipeline explosion evidence.

¶24. The record shows that Destin never introduced such evidence. Nevertheless, even if Destin did "open the door," the Trust never proffered any pipeline explosion evidence. This Court has held that an eminent domain appellant must show that an alleged error in the trial court was prejudicial by proffer so that the appellate court can determine for itself whether the exclusion was actually harmful. *Foster v. Mississippi State Highway Comm'n,* 244 Miss. 57, 140 So. 2d 267, 271 (1962).

¶25. The Trust claims that the presence of Destin's pipeline has an "unavoidable effect" on the remainder of the Trust's land and "imposes [an] immediate, non-speculative limitation on the development of the remainder." The Trust, however, did not support this claim with any evidence. The Trust's real estate appraiser was permitted to testify concerning his opinion of damage to the remainder resulting from access limitations across the pipeline, and surely, if he had such an opinion, he could have testified to any alleged damage which may have occurred to the remainder by the mere presence of the pipeline on the property. This claim is without merit.

### *Good Faith Negotiations*

¶26. The Trust alleges that Destin did not make a good faith offer to purchase the right-of-way prior to filing the eminent domain petition. The record shows that Destin offered the Trust $7,250 prior to filing the petition. The jury assessed the Trust's interest in the property to be $8,750. This claim is without merit and justifies no further consideration.

## CONCLUSION

¶27. For these reasons, the judgment of the Special Court of Eminent Domain of Jackson County, Mississippi, is affirmed.

¶28. **AFFIRMED.**

> **PRATHER, C.J., PITTMAN, P.J., SMITH, MILLS AND COBB, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BANKS, P.J. DIAZ,**

**J., NOT PARTICIPATING.**

**McRAE, JUSTICE, DISSENTING:**

¶29. I disagree with the majority's holding on the issue of exclusion of evidence of a comparable sale. The evidence was not sufficient to establish that the Trust was under a legal compulsion to sell to Koch Pipeline. The property owner should have been allowed to present this crucial evidence. This being so, the evidence of the sale was admissible, and the trial court erred in excluding it. Accordingly, I dissent.

¶30. The trial court erred in its exclusion of evidence of a sale made by the Trust in 1997 to Koch Pipeline for a liquid pipeline right-of-way easement along the north end of the Trust property. The majority argues that the Koch-Trust sale was properly excluded as a comparable sale, because it was compulsory. This premise is clearly in error.

¶31. This Court held in *Crocker v. Mississippi State Highway Comm'n*, 534 So. 2d 549, 552 (Miss. 1988), that:

> Fair market value is a value in exchange. It is the sales price that would be negotiated between one who wants to purchase and one who wants to sell. *Green Acres Memorial Park, Inc. v. Mississippi State Highway Comm'n*, 246 Miss. 855, 153 So.2d 286, 289 (1963). The seller must be one who desires but is not obligated to sell, and the buyer must be under no necessity of having the property. *Mississippi State Highway Comm'n v. Hillman,* 189 Miss. 850, 198 So. 565, 571 (1940). See American Institute of Real Estate Appraisers, The Appraisal of Real Estate 33-34 (8th ed. 1983).

In order for a sale to be inadmissible as an "involuntary sale," "[t]he element of compulsion must be based on legal, not economic, factors." 5 Nichols on Eminent Domain § 21.05 (3d ed.1999). *See also United States v. Certain Land in the City of Fort Worth*, 414 F.2d 1029, 1031 (5th Cir. 1969) ("Economic causes are not enough to render a transaction involuntary and inadmissible."); *Colonial Pipeline Co. v. Gimbel,* 456 A.2d 946, 952 (Md. Ct. Spec. App. 1983) ("Forced sales are those occurring as a result of legal process."). "[T]he mere fact that a corporation, which purchased land by voluntary sale, was invested with the power of eminent domain does not in and of itself show that the sale was a compulsory settlement rather than a fair transaction in the market." 5 Nichols on Eminent Domain § 21.06, at 21-76 (footnote omitted). The majority notes that "compulsion may also be created by business circumstances." While Koch may have needed the property to complete the project without rerouting the pipeline, such a condition does not qualify as a business circumstance that would render the sale compulsory. An example of a forced sale under business circumstances can be seen when a property is taken to discharge a debt, but the creditor had little choice in the matter. *Hickey v. United States*, 208 F.2d 269, 275 (3d Cir. 1953) (citing *Lanquist v. City of Chicago*, 65 N.E. 681 (Ill. 1902)). Such is not the case here.

¶32. The trial court erred, when it excluded evidence of the Koch sale on the basis that Koch needed the property and, thus, held that the sale was not a voluntary one. It could have condemned the property and let the issue go to trial, but instead the trial court put a value on the property. This issue should have been presented to a jury with an explanation of why the trial court held the sale was involuntary. There was no finding that the Trust was under a legal compulsion to sell the property to Koch. Any objection to the evidence would go to its weight, not its admissibility.

¶33. The reason for this distinction between legal and economic compulsion was explained by the New

Jersey Supreme Court of Errors and Appeals in *Curley v. Jersey City*, 85 A. 197, 198 (N.J. 1912):

> Almost all sales, however, are necessarily influenced on one side or the other by considerations outside of the fair market value of the property. Either the seller is influenced by the circumstances of his affairs, which make it desirable for him to sell even at some sacrifice, or else he thinks he is getting more for his property than its real worth; and, on the other hand, the purchaser has some special need or use for the property which makes it more valuable to him than to others not having such need, or else he thinks he is buying at less than the property is really worth. If the sale, as here, takes place between parties, one of whom has the power to condemn, it may likewise be that the seller or the buyer, and possibly both, are influenced by other considerations as well as by what they think is the fair market value of the property. The seller may think that if he does not sell amicably he will be put to the expense of being properly represented at the condemnation proceedings; but, on the other hand, he doubtless weighs against this the fact that a jury is very apt to give a liberal market value for properties taken under condemnation for the very reason that the owner is being compelled to sell against his will. The purchaser, on the other hand, knowing that what the law requires him to pay is at least a fair value, and knowing that a jury is inclined to construe this as meaning a value particularly 'fair' to the man who sells against his will, may also be somewhat influenced. But, in the absence of extraordinary circumstances, we are unable to see, as a general rule, why private sales to parties having the right to condemn do not come quite as near representing in their results true market value as do such sales made between parties, neither of whom have this power. It is easy enough to imagine special circumstances, falling in each class, where the result in the price obtained is, because of such special circumstances, so clearly abnormal as to destroy the similarity which must exist in order that the evidence shall be admissible. In other cases where the special circumstances are not of sufficient importance to produce this result, they may nevertheless affect the weight of the evidence, and be used for that purpose before a jury. This is so whether the purchaser is or is not a party having the power to condemn.

*District of Columbia Redevelopment Land Agency v. 61 Parcels of Land*, 235 F.2d 864, 865-66 (D.C. Cir. 1956) ("A comparable sale was not under compulsion, coercion, or compromise in this sense if the witness testifies, or if it is otherwise shown, that the public records do not disclose that the sale was at foreclosure, under deed of trust securing an indebtedness, at execution or attachment, at auction, under pressure of the exercise of the power of eminent domain, or other coercion sui generis -- types of legal compulsion generally disclosed by public records."); *see also City and County of Honolulu v. International Air Serv. Co.*, 628 P.2d 192, 199 n.8 (Haw. 1981) (admission of evidence of negotiated sales to the City of property similarly subject to condemnation not abuse of discretion); *State ex rel. Dept. of Highways v. Terrebone,* 349 So. 2d 936, 939 (La. Ct. App. 1977) ("Our jurisprudence holds that a voluntary sale by an owner under threat of imminent expropriation is relevant in establishing market value, especially where it indicates the expropriated property is not worth less than the sum voluntarily paid by the expropriating authority."); *Township of Moorestown v. Slack*, 204 A.2d 23, 26 (N.J. Super. Ct. App. Div.1964) ("In the absence of affirmative evidence that the sellers were under compulsion, sales to an authority having the power of condemnation do not by reason of that fact alone necessarily lose competency or significant probative weight.").

¶34. Here, the evidence was not sufficient to establish that the Trust was under a **legal compulsion** to sell to Koch Pipeline. The property owner and the jury were deprived of a valuable piece of evidence that should have been presented to a jury. This being so, the evidence of the sale was admissible, and the trial

court erred in excluding it. Accordingly, I dissent.

**BANKS, P.J., JOINS THIS OPINION.**

1. A Mr. Delmas, the other co-owner of the subject tract of land, settled his interests with Destin and is not a party to this action.

2. Even though Destin was acquiring both rights-of-way and easements, for convenience, the Court will refer to both interests as a "right-of-way."

3. A "savannah" was defined by witness John W. Burris as "an open area, [with] few trees, typically with grassland underneath[,] . . . where there's a fair amount of rainfall."